## DOE, on the Demise of HOLMAN *v.* COLLINS.

A judgment was rendered in the *Ripley* Circuit Court on the 28th of *February*, 1843, in a suit on a contract made in the state of *Illinois* on the 14th of *October*, 1839. The debtor's land was sold under an execution on the judgment. *Held*, (in a case where the execution law of *Illinois* was not proved,) that the sale must be governed by the laws of this state.

The statutes of one state, unless proved, will not be noticed by the Courts of any other state.

*Quære*, whether the Courts of one state are bound to give effect to the execution laws, though proved, of other states.

The execution law of 1843 (the contrary not being shown) must be presumed to have been in force in *Ripley* county when the aforesaid judgment was rendered.

A sale of land on execution (the execution law of 1843 being in force when the judgment was rendered and the sale made), without appraisement and for less than its fair value, is void, though the purchaser had not actual notice of the irregularity.

ERROR to the *Ripley* Circuit Court.

PERKINS, J.—This was an action of ejectment. The

cause was submitted to the Court without a jury, and judgment rendered for the defendant. A bill of exceptions places the evidence upon the record.

The lessor of the plaintiff claimed title from a sheriff's sale, which took place under an execution upon a judgment rendered in the *Ripley* Circuit Court on the 28th of *February*, 1843, against *Collins*, the defendant in that and in this suit. The sale was without regard to the appraisement laws. The cause of action, upon which the judgment last mentioned was rendered, was a note for 650 dollars, payable one day after date, and made on the 14th of *October*, 1839, in the state of *Illinois*. No law of that state was set out in the declaration, or proved on the trial, in the suit upon the note, or in this suit.

These facts present the questions upon which the decision of the case before us must turn. The plaintiff was entitled to recover in this case unless the sale from which his lessor derived title, being in disregard of the appraisement laws, was void. His counsel insists that that sale was not void for the following reasons: 1. The sale was made in accordance with the law of this state at the date of the contract upon which the judgment was rendered; 2. If the sale should have been made pursuant to any one of our appraisement laws, still, the failure of the sheriff to observe that law would not affect the title of a *bona fide* purchaser; 3. The land in controversy, though not appraised, was sold, as the evidence shows, as high as, by the appraisement law, was required, and therefore that law, though not literally, was, substantially, complied with.

In examining this case, the first point to be determined is, whether the law of *Illinois* or of *Indiana* was to govern in the sale of the land in dispute. As no law of *Illinois* was proved upon either of the trials, none could be regarded by the Courts or officers here, unless they were bound to presume the common law in force there; but, admitting they were bound to act upon that presumption, it could have no bearing upon this case, as, by that law, real estate was not subject to sale on execution. Its sale

in that manner depends upon statute laws, and they differ widely in different states. Whether they exist at all, and their peculiarities, in any given state, must be proved in the Courts of any other state. Nor do we mean to say that one state would be bound to give effect to the execution laws of another state, even were they proved. International comity requires the Courts of each state to recognize and execute some laws of foreign states, and in regard to others it makes no such requirement. They must be such laws, to entitle them to this consideration, as do not pertain simply to the remedy, and such, according to the opinion of the Supreme Court of the *United States* in the *Bank of Augusta* v. *Earle*, 13 Peters, 519, as are "not repugnant to the laws or policy" of the country whose Courts are asked to give effect to them. We can easily conceive that there might be such a repugnancy in the execution laws of different states, that those of one would not be enforced in the tribunals of another. Suppose, in the present case, that no such officer as sheriff, and no writ of execution for the sale of property, were known to our laws; but that, on the rendition of a judgment, it was the duty of the Courts here to appoint men to set off, at a valuation, property of the defendant which the plaintiff was bound to accept in satisfaction of the debt; while in *Illinois*, it was proved upon the trial in this state, property was sold in satisfaction of judgments, by an officer, on execution, for what it would bring; would our Courts, in such a state of facts, recognize and execute the law of *Illinois?* See Story's Conflict of Laws, chap. 14, where the whole subject is examined, and *Smith & Sample* v. *Atwood & Co.*, 3 McLean, 545. On this point however, we decide nothing, as in the case before us, the execution law of *Indiana*, as we have seen, must govern.

The next step in this investigation will be to determine what law of this state governed the execution sale. Was it the law of 1839, the date of the contract sued on, or that in force at the time the contract may have been brought into this state; or that of the time of the commencement of the suit; or of the date of the judgment

or of the execution sale? It seems to us that that execution law should govern which first entered into and formed a part of the contract in the case; and as it was made in *Illinois*, no law of this state, at its date, could form a part of it, nor do we see how our law could become incorporated into that contract until it underwent some change within the limits of this state. The bringing of it within those limits was no change in the contract, nor was the commencement of suit upon it; and indeed it may not necessarily have been brought into this state till the day it was produced in evidence on the trial of the cause, which was the day of the rendition of judgment upon it. We do not discover that the contract in question underwent any change till it was merged in a judgment. Whether that was such a change as gave the plaintiff a vested right in the law of the state as it then existed, or whether the law at the time of the sale should guide the officer, need not now be inquired into, as the law, at the rendition of the judgment, was the same, upon the point in question, as the law at the time of the sale.

We are next to ascertain what was the law of *Indiana* at the date of the judgment. The execution law of 1843, amendatory of that of 1842, was approved on the 11th of *February*, and was published at *Indianapolis* on the 14th of the same month. It was, by a provision of the law, made the duty of the secretary of state to forward, immediately after its publication, a copy thereof to the clerk's office of each county in the state; and upon its being filed in any one of those offices, the act became the law of the county in which such office was. The judgment under consideration was rendered on the 28th of *February*, being a much longer time after the publication of the law than was necessary for the transmission of a copy of it to *Ripley* county. We presume, therefore, the contrary not being shown, that the law of 1843 was in force at the date of the judgment. By the first section of that law it is enacted: "That no property of any description whatever, either real or personal, shall be sold on execution or by virtue of any other process issued by

any other officer of this state, for a less sum than its fair value at the time of such sale," &c., which value, by sect. 2, is to be determined by an appraisement pursuant to the statute. The testimony shows that the sale involved in this case was at a price, at most, not exceeding two-thirds of the fair value of the property sold, and hence, as the fact assumed by the counsel in his third position is shown not to exist, we shall not be under the necessity of passing upon the question of law raised upon that assumed fact.

The question remains to be considered whether the sale, being in violation of the law prohibiting the sale of real estate on execution for less than its fair value, is void as to a purchaser not shown to have had actual notice of such violation. The doctrine is well settled that all purchasers at sheriff's sale are bound to know that those facts exist which give the officer power to sell, being, generally, the judgment of a competent Court and a legal execution. This is certainly right on principle, as the sheriff, in the sale of real estate, is but an agent or officer of the law with limited powers conferred by statute; and we believe it is universally acknowledged, that a purchaser of property from a private special agent, is bound to take notice of the extent of his powers, and that a purchase from such an agent, where he is not authorized to sell, is invalid. And further, it will, we presume, not be controverted, that a principal may revoke or modify the power by him conferred, where it is not coupled with an interest. If, then, the legislature see fit to impose limitations upon the power of the sheriff to sell real estate, that body may do so, and the promulgation of a law making a restriction would be notice thereof to all the citizens of the state. The legislature of our state did, as we have seen, in 1843, by the law above quoted, impose an additional limitation to those before existing, upon this power of the sheriff, and expressly prohibited him making any sale thereafter except in cases where he was offered the value of the property as determined by appraisement. After the coming into force of this pro-

hibition, then, the sheriff, in cases governed by it, had no power to sell, without the existence of a judgment, an execution, and a bid equal to the value of the property offered. The sale under consideration we have already determined was under this prohibition; it was without an appraisement; was for less than the fair value of the property, and was, consequently, void, for want of power in the sheriff to make it. See *Harrison* v. *Doe*, 2 Blackf. 1.—*Chapman* v. *Harwood*, 8 *id.* 82.—*Gantley's* lessee v. *Ewing*, 3 Howard, U. S., 707.

Nor, were we to put the case on that ground, do we think there is any more hardship in requiring a purchaser to inform himself as to the appraised value of the property, than there is in requiring him to know of the judgment and execution. The appraisement must be in writing, must be taken by and lodged with the sheriff before the sale, and must be returned with the execution. We do not see why it is not as easy of access as the execution itself to one desiring to become a purchaser.

Perhaps, to prevent misconstruction, we should remark, that this decision does not change the rule that the officer, in making sales, is presumed to have done his duty; but simply enables a party to show a sale void by rebutting that presumption as to the fact of an appraisement.

*Per Curiam.*—The judgment is affirmed with costs.

*E. Dumont*, for the plaintiff.

*J. Ryman* and *P. L. Spooner*, for the defendant.