*John R. Coffroth,* for the appellees.

---

## Hutchins v. Barnett's Executor.

The appraisement law in force at the date of a judgment will govern sales on execution to satisfy it, when the contract upon which the judgment was rendered was executed and to be performed without the State, because our appraisement law could not, in such case, enter into and constitute a part of such contract.

In an action to set aside a sale on execution, issued on such judgment, instituted before the delivery of a deed by the sheriff to the purchaser, and before the payment of the purchase money, it is competent to show by testimony where such contract was executed and payable.

APPEAL from the *Allen* Circuit Court.

DAVISON, J.—This was a proceeding by notice and motion to set aside certain levies and sales of real estate, upon the ground "that the sales were made without appraisement." The motion was made by *Hanna,* as executor of *James Bar-*

*nett,* deceased, against *Hutchins,* the execution plaintiff, was sustained by the Court, and judgment was accordingly rendered. The facts alleged and proved, so far as they relate to the point in controversy in this Court, are as follow: Prior to the October term, 1841, *Hutchins* instituted an action upon two promissory notes, in the *Allen* Circuit Court, against *Joseph Scott, John Iten, and Francis Comparet,* partners, etc., under the name of "*Scott, Iten & Co.*" The notes read thus:

"$338. New York, August 12, 1840. Eight months after date, we promise to pay to the order of *George H. Hutchins* three hundred and thirty-eight dollars, at New York city, in city funds, for value received. SCOTT, ITEN & CO."

"$538. New York, August 12, 1840. Six months after date, we promise to pay to the order of *George H. Hutchins* five hundred and thirty-eight dollars, at the *Br.* at *Fort Wayne* of the State Bank, Indiana, with current rate of exchange in New York, for value received.

"SCOTT, ITEN & CO."

The complaint upon these notes, in its description of them, alleges, under a *videlicit,* that they were made in the County of *Allen,* and State of *Indiana.* On the 13th of October, 1841, being the ninth judicial day of said term, the parties appeared; but the defendants said nothing in bar or preclusion, and the Court thereupon assessed the plaintiff's damages at eight hundred and ninety-nine dollars, and for that sum rendered a judgment, etc. And on the 8th of December, then next following, *James Barnett,* then in life, but now deceased, became replevin bail on the judgment.

On the 8th of July, 1844, a writ of *fieri facias* was issued on said judgment against the principal defendants and *Barnett,* the replevin bail, and levied on nine lots, " set out by their numbers," in *Hanna's* addition to Fort Wayne, as the property of *Francis Comparet.* These lots were afterward, upon a *venditioni exponas,* sold for fifty dollars. After this, in March, 1847, an *alias* writ of *fieri facias* issued, and was

levied upon the one undivided third of thirty-seven acres,. situate in *Allen* county, as the property of *Scott*, also upon the center third of lot No. 57, in the city of Fort Wayne,. as the property of *Iten*, and also upon lot No. 104, in that city, and the west half of the north-west quarter of section 14, township 30, range 12, in said county, as the property of *Barnett*. On the 24th of May, next ensuing the date of these levies, the aforesaid undivided interest in the thirty-seven acres, and the center third of lot 57, were sold by the sheriff, without appraisement. But said writ of *fieri facias*,. as to *Barnett's* property, was returned " no sale for want of bidders." And on the 11th of September, 1850, a writ of *venditioni exponas* issued, upon which the property of *Barnett*, as above described, was offered for sale, without appraisement, and purchased by *Hanna*, in his own right, for twelve hundred and thirty dollars. *Barnett*, on the 29th of April, 1851, the day after his property was thus sold, notified *Hanna*, in writing, that he should proceed to have the sale set aside, as irregular and void. And *Hanna*, having refused to accept a deed, pursuant to his purchase, or pay the purchase money, the sale, as yet, remains incomplete.

The plaintiff, upon the trial, offered evidence tending to prove " that at the time said notes were executed, *Hutchins*, the payee thereof, was and still is a resident merchant in the city of New York, in the State of New York;" that " *Scott, Iten & Co.* were his customers, and the notes were given by them to him for goods sold by him to them, in said city of New York, and were there executed. And that the New York city mentioned in the note dated August 12, 1840, for three hundred and thirty-eight dollars, as the place where the same was payable in city funds, was the city of New York, in the State of New York." This evidence, though resisted by the defendant, was admitted by the Court, and the defendant excepted.

It is agreed by the parties, that the only question to be

presented is : " Whether the Court erred in admitting evidence as to the place where the notes were executed and payable?"

The first appraisement law was approved February 12th, 1841. It required the sale to be at half the appraised value, and was in force when the judgment against " *Scott, Iten & Co.*" was rendered. But the notes upon which that judgment was founded were made in August, 1840, and the general rule is, that such laws are not operative as to prior contracts. Where, however, the contract involved in the judgment was executed, and was to be performed without the State, our law on the subject of appraisement could not enter into and constitute a part of such contract; and the result is, the appraisement law in force at the date of the judgment will govern the sale on execution. 1 Ind. 24; 8 *Id.* 533. Hence the inquiry : Whether, in this instance, the evidence was admissible ? It is conceded, that anterior to the issuing of the execution, the question as to where the claim originated might have been tried and determined before the Court, in a proceeding instituted on motion, or by complaint, but insisted that a sale on execution having occurred, it was not competent by evidence to rebut the presumption that the notes were executed within this State. The position thus assumed, in its application to the case at bar, seems to be incorrect. If the sheriff's sale had been completed, so that under it the title to the estate sold and conveyed by the sheriff had become vested in an innocent purchaser, it may be, that as against such purchaser, the evidence would be inadmissible. But here the sheriff's vendee had simply bid off the property, had received no deed, nor had he paid the purchase money; and that being the case, it seems to us that, on motion to set aside the sale, it was competent to adduce evidence tending to prove that the sale was made in violation of the substantial requirements of the statute. Indeed, it has been often

decided that "where the law, as applied to the contract, required an appraisement, a sale without it is void." 2. Blackf. 1–32. 1 Ind. 24. And, as in this instance, the offered evidence conduced to prove the sheriff's sale a nullity, it was, in our opinion, correctly admitted.

*Per Curiam.*—The judgment is affirmed, with costs.

*John Morris, Wm. H. Combs,* and *John Hough,* for the appellants.

*R. Brackenridge,* for the appellee.