## ROCHE *v.* WASHINGTON.

A contract of marriage, formed in Indiana, between residents of the State of Indiana, to be valid, must conform to the laws of Indiana.

A marriage between a male and female of the *Miami* tribe of Indians, formed according to the customs of the tribe, while the parties to it were residents of Indiana, can not be recognized as a valid marriage under the laws of Indiana.

The *Miami* tribe of Indians is not a nation, or independent people, between which and ourselves the principles and regulations of international law can apply, or be enforced.

APPEAL from the *Huntington* Circuit Court.

Roche *v.* Washington.

PERKINS, J.—Suit for partition, instituted by *Francis Washington* against *John Roche.* Partition adjudged. Motion for a new trial overruled. Commissioners report partition. Report confirmed. New trial denied. Appeal to this Court.

The cause was decided upon the following agreed case:

"It is hereby agreed, by the parties to this action, that the following are the facts of the case: The land in question, of which partition is prayed, was the property of *La-ka-ko-quah,* alias *Jane Richardville,* who died seized of the same in 1857, leaving no children, nor father or mother, but leaving her husband, as hereinafter stated, whose name is *George Washington,* and her sister, *Catharine Richardville,* her brother, *Snap Richardville,* and *Francis Washington,* the plaintiff, who is an only son of her sister, *Ah-tah-pe-tah-neah,* deceased. It is further agreed, that the defendant, *John Roche,* has the title of *George Washington, Catharine* and *Snap Richardville,* conveyed to him since the decease of the said *Jane Richardville.* It is further agreed, that all of the foregoing persons, except the defendant, are, or were, *Miami* Indians.

"It is further agreed, that, in the year 1844, the said *George Washington,* according to the manner and custom of marriage in said *Miami* tribe of Indians, was duly married to *Le-qua,* a *Miami* Indian, with whom he lived, residing in *Huntington* county, *Indiana,* where a part of the said *Miami* tribe then and since have resided—that in the year 1846, the said *George Washington* and the said *Le-qua,* according to the manner and custom of divorce in said *Miami* tribe, were duly divorced—that in the same year, 1846, said *Le-qua* removed to *Kansas* territory, where she has since resided, and now resides—that afterward, in the year 1847, said *George Washington,* according to the custom of said tribe of Indians, was married to the said *Ah-tah-pe-tah-neah,* who departed this life in 1852, leaving said *Francis Washington* her only surviving child—that afterward, in 1853, said

*George Washington*, according to the custom. of said Indian tribe, was married to said *La-ka-ko-quah*, alias *Jane Richard-ville*, and that the two lived together, and cohabited as man and wife, till her death, at the County of *Huntington*, in 1857, she dying childless.

"It is further agreed, that the Indian custom of marriage requires no ceremony further than the agreement of the parties to live together as husband and wife, the agreement being consummated by living and cohabiting together as such.

"It is further agreed, that the Indian custom of divorce requires no special form of proceeding, other than that the parties disagree, and, by consent, separate, the mother usually taking care of, and receiving the annual payment of the Government to, the children; and that the said customs of . marriage and divorce are the ancient, immemorially .continued, and present existing customs among all of said tribe of Indians, and the law thereof; and that the same have continued to exist, as their customs and laws, from a period beyond the memory of man.

"J. R. COFFROTH, *Attorney for Defendant.*
"L. P. MILLIGAN, *Attorney for Plaintiff.*"

The question intended to be presented for our decision in this cause, is, whether the Courts of Indiana will hold valid, as marriages, such unions, and as divorces, such separations, as those described in the agreed statement of facts, they having been made under, and being sanctioned by, the laws of the *Miami* tribe of Indians.

It is claimed that, by the law of nations, the Courts of Indiana must uphold Indian marriages. The law of nations, or international law, is mainly of modern origin, growing out of increased commercial and social intercourse, and exists only among civilized states. 1 Kent, p. 1. It is very properly divided by late writers into public and private.

Public, that which regulates the political intercourse of nations with each other. Private, that which regulates the comity of states in giving effect, in one, to the municipal laws of another, relating to private persons, their contracts, etc.

The first question to be decided is, then, Does a tribe of North American Indians constitute a state? We think not. A state has been defined to be "a people permanently occupying a fixed territory, bound together by common laws, habits, and customs [or by a constitution,] into one body politic, exercising, through the medium of an organized government, independent sovereignty and control over all persons and things within its boundaries, capable of making war and peace, and of entering into international relations with other communities." See New Am. Cyclop. vol. 10, p. 360. Wheat. L. of Nations, pp. 53, 54. 1 Kent, 188, 189. But few of the particulars enumerated as constituting a state, exist in a tribe of North American Indians. See, however, *The Cherokee Nation* v. *Georgia*, 5 Pet. (U. S.) Rep. 1. This the Court judicially takes notice of as matter of general historical knowledge; the Indians are not educated above the condition of nomadic, pastoral tribes, if up to it. Neither, were these tribes conceded to be states or nations, in the political or international sense of the terms, are they civilized.

Civilization, it is true, is a term which covers several states of society; it is relative, and has not a fixed sense; but, in all its applications, it is limited to a state of society above that existing among the Indians of whom we are speaking. It implies an improved and progressive condition of the people, living under an organized government, with systematized labor, individual ownership of the soil, individual accumulations of property, humane and somewhat cultivated manners and customs, the institution of the family, with well-defined and respected domestic and social relations,

Roche v. Washington.

institutions of learning, intellectual activity, etc.   We know, historically, that the North American Indians are classed as savage and not as civilized people; and that, in fact, it is problematical whether they are susceptible of civilization.

But, let it be admitted that the *Miami* tribe of Indians constitutes an international political State, and that it is a civilized one, still the State of *Indiana* is not bound by international comity to give effect, in her courts, to all the laws and customs of such State; but only to such as are not repugnant to her own laws and policy.   1 Ind. 24.

Laws giving effect to contracts of marriage are not repugnant to the laws of *Indiana*, and the proposition is established, as a general one, in private international law, that an actual marriage, valid in the country where celebrated, will, not as upon a claim of right, but by courtesy, be given effect to in other States, though not celebrated by the forms nor evidenced in the mode prescribed for marriages in such other States.   If, then, in the case at bar, an actual marriage took place between *Jane Richardville* and *George Washington*, there could be no objection to its being upheld in the courts of this State, though celebrated among an uncivilized tribe of Indians.

What, then, constitutes the thing called a marriage? what is it in the eye of the *jus gentium?*   It is the union of one man and one woman, " so long as they both shall live," to the exclusion of all others, by an obligation which, during that time, the parties can not, of their own volition and act, dissolve, but which can be dissolved only by authority of the State.   Nothing short of this is a marriage.   And nothing short of this is meant, when it is said, that marriages, valid where made, will be upheld in other States. *Noel* v. *Ewing*, 9 Ind. 37.   Story's Conflict of Laws, chap. 5. Wheaton's Law of Nations, 137.   See *Reynolds* v. *Reynolds*, 3 Allen (Mass.) Rep. 605.   From what has been said, it is manifest that the union between *Jane* and *George*, described

in the statement of facts in the case at bar, was not a marriage, according to the law of any civilized nation, but simply and exactly a contract and state of concubinage. See Cobb. on Slavery, 245, note 4. *The State* v. *Samuel*, 2 Dev. and Bat. (N. C.) Rep. 177. But, suppose the union had been such as to constitute marriage, according to the *jus gentium*, and which the courts of this State would have upheld as such, it might not still have followed, as a consequence, that the husband would have inherited, from the wife, her real estate. The marriage is one thing, and the incidents, the legal rights, and consequences attaching upon marriage, are another; and these may be different as to real and personal property. 2 Kent, p. 93, *et seq.* Marriage, in different countries, is followed by different property rights. In the *Miami* nation, or tribe of Indians, marriage, supposing we concede their unions of sexes to be such, is not followed by a right in either party, by the law of the tribe, to inherit real estate from the other; for the Indians, by their laws, neither in their tribal capacity, nor individually, owned any real estate. It is a kind of property unknown to them. They simply hold vaguely-defined territory, for use in hunting, fishing, etc., and they never assumed to, and could not convey, the fee, to any one. That belonged, first, to Great Britain, as the discovering nation, and to the United States afterward, by succession to Great Britain; and it is under our laws only that any individual among these Indians ever obtained, conveyed, or inherited real estate. See *Fellows* v. *Denniston*, 23 N. Y. Rep. 420. *The Cherokee Nation* v. *Georgia*, 5 Pet. (U. S.) Rep. 1. This is the doctrine of international law held by civilized States, and acted upon without consulting the Indians. It is based or justified on the ground that the Indians never cultivated the soil. But the case does not turn on any of the foregoing points, and they need not, therefore, be regarded as decided. See, on the general subject, *Dale* v. *Irish*, 2 Barb. 639. *Wall* v. *Wil-*

*liamson*, 8 Ala. 48. 11 *Id.* 826, and 10 *Id.* 630. Also, *Jones* v. *Laney*, 2 Texas, 342, and the cases in the Supreme Court of the United States, cited in Cush. Dig. 240.

A treaty, however, we may remark, may be made between a government and an association of persons not constituting an independent government. The Constitution of the United States authorizes our government to treat with foreign *nations*, and to regulate affairs with *states* and *Indian tribes*. We know, as a part of the law of the land, and the history of our State, that the last treaty between the *Miami* tribe of Indians, located in Indiana, and the United States, was in 1840; that the tribe then agreed to remove from Indiana to West of the *Mississippi* river; that, in 1846, the agreement was executed, the chiefs at that time extinguishing their council fires upon the Wabash, and, accompanied by most of the living members of their tribe, departing for their newly assigned and distant home. The sovereignty of the tribe, so far as it possessed sovereignty, its jurisdictional power, so far as it possessed such over persons and property in Indiana, disappeared with the light of its council fires, and departed to the new seat of the tribe.

Now, it is true as a general proposition, that the laws of a nation are operative only within the limits of the territory over which the jurisdiction of the nation extends. They do not, as a general proposition, follow the individuals of such nation into the jurisdictional limits of another nation, so as to attach to acts done in such other nation. Hence, if citizens of Great Britain, of China, or of Africa, contract marriage in Indiana, that contract, to be valid, must conform to the laws of Indiana. 1 Bright's Husband and Wife, p. 8. 1 Greenleaf's Ev., sec. 545. For exceptions to the general proposition above stated, see Wheaton's Law of Nations, p. 132, third edition. The marriage, in the case at bar, was contracted in Indiana, between *Miami* Indians who did not accompany the tribe to the West, but remained to live

among our people; and it was contracted after all territorial jurisdiction of the tribe had ceased in the State, and after the tribe itself, with its government, had disappeared from our borders. The marriage, therefore, was clearly to be tested by the law of Indiana; certainly so, when it came in question in our own tribunals.

*Per Curiam.*—The judgment below is affirmed, with costs.

*John R. Coffroth*, for the appellant.

*L. P. Milligan*, for the appellee.