C. D. ROYAL, Appellee, v. CUDAHY PACKING COMPANY, Appellant.

MASTER AND SERVANT: Workmen's Compensation Act—Disputed
1  Questions of Fact.   Principle reaffirmed that the findings of the industrial commissioner on disputed questions of fact are conclusive on the courts.

MARRIAGE: What Law Governs—Mohammedan Laws and Customs.
2  The marriage in the Ottoman Empire of a man and woman of the Mohammedan faith will not be treated in this state as polygamous because of the fact that, under Mohammedan laws and customs, the husband *might* legally contract three *additional* marriages, and thereby have four wives simultaneously.   So held in treating the wife as a dependent, under the Workmen's Compensation Act.

DIVORCE: Presumption.   Principle reaffirmed that a presumption of
3  divorce will not be indulged, except in some rare instances in aid of (1) innocence and (2) legitimacy of offspring.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

NOVEMBER 21, 1922.

REHEARING DENIED APRIL 3, 1923.

THIS is an appeal from a judgment of the district court affirming an award made by the Iowa industrial commissioner in favor of C. D. Royal, consular representative, etc., of the dependents of Aleck Hanoon, deceased, the dependent being Fatima Hanoon, the alleged wife of deceased.   She resides in the Ottoman Empire, and is a nonresident alien.   The arbitration committee made an award in favor of plaintiff, which was affirmed by the industrial commissioner.   The district court affirmed the commissioner.   Defendant appeals.—*Affirmed.*

*Snyder, Gleysteen, Purdy & Harper,* for appellant.

*Oliver, Harding, Oliver & Royal* and *C. D. Royal,* for appellee.

PRESTON, J.—In affirming the award of the arbitration committee, the industrial commissioner expressly found that the deceased was duly married to Fatima Hanoon; and that they
lived as husband and wife until deceased came
to this country. The commissioner further
found that the parties were never legally divorced, and that the said Fatima never willfully
deserted the deceased husband without fault on his part. Under the familiar rule, as announced a number of times in recent cases, the finding of the industrial commissioner on disputed fact questions is conclusive upon the court. Unless it be found that there exists one of the exceptions for appeal enumerated in the statute, this appeal must fail, and the judgment of the district court must be affirmed. The trial court found that none of the four grounds set out in the statute existed, and rendered judgment in accordance with the decision of the commissioner.

1. MASTER AND SERVANT: Workmen's Compensation Act: disputed questions of fact.

Deceased was born and lived in Syria until about 1900, when he came to this country. During the last few years of his life, he was employed by defendant, and was killed while in the course of his employment, in August, 1917. His death was caused by an injury arising out of and in the course of his employment. Claimant's evidence tends to show, and the commissioner so found, that, prior to the emigration of deceased from Syria, he was married, and lived with his wife, Fatima, for several years; that deceased carried on correspondence with his wife; and that, through his brother's help, he sent her money at various times. To overcome this evidence, and the presumption of dependency, appellant introduced evidence of an alleged attempt on the part of deceased to divorce the claimant. This was about 1909. This evidence was hearsay, and is so conceded by appellant. The commissioner found from the evidence in the case, which will be briefly referred to in a moment, that what was done was not sufficient to constitute a valid divorce, according to Mohammedan law and custom.

Mehmed Ali testified on behalf of claimant, that he was chaplain of the Imperial Ottoman Embassy, at Washington, D. C., and that he was familiar with the Mohammedan laws of marriage and divorce.   He states what would be necessary to constitute a valid divorce under Mohammedan law; that remarriage of the wife thereafter, if she had remarried, would not be valid according to Mohammedan law; that the husband, under Mohammedan laws, may have four wives simultaneously.   There is no evidence that deceased ever had more than one wife.   There is some evidence concerning an attempt to marry deceased to a woman in Cedar Rapids, but it is not shown that deceased was a party to such transaction, or that any marriage was consummated.

The errors assigned and relied upon are that the court erred, first, in holding that the widow was not barred from claiming to be such; second, in holding that the widow had established her status as the wife of decedent, even under a polygamous marriage; and third, in holding that a polygamous marriage made the widow the wife or spouse of decedent, within the intendment of the laws of this state.   These several propositions are elaborated upon in the brief points and argument. The trouble with appellant's argument—a considerable part of it, at least—is that it assumes that its evidence must be taken as a verity.   The evidence of claimant on the different propositions is referred to by appellant as unreliable and improbable. The weight and credibility of the witnesses were for the committee and the commissioner.   As shown, there is a conflict in the evidence.

1.   The marriage between deceased and claimant may be shown by circumstantial evidence.   The brother of deceased testifies that deceased was married in the old country to claimant; that witness was present when deceased was married.   A ceremony was performed.   Both deceased and his wife were Mohammedans, and they married in accordance with the Mohammedan religion.   A license was taken out, which they got from the court.   They had three or four children.   This alleged marriage is referred to by appellant as an affair and a *liaison*.   One of the propositions relied upon by appellant as to the alleged

2. MARRIAGE: what law governs: Mohammedan laws and customs.

marriage is based upon a statement in the evidence of Mehmed Ali, that deceased could have had four wives. It is conceded by appellant that, as a general rule, a marriage valid where made will be upheld in other states and countries. But the proposition is that this rule presupposes and applies to a situation in which the institution of marriage is substantially the same thing in the country where the marriage was made as in the country where its recognition is sought, and that the rule is limited to marriages that are not polygamous or incestuous. Appellant cites *Roche v. Washington*, 19 Ind. 53, 57, as defining the kind of marriage meant within the rule: that it is the union of one man and one woman to the exclusion of all others, by an obligation which the parties cannot, of their own volition and act, dissolve, but which can be dissolved only by authority of the state. It is there said that nothing short of this is marriage, and nothing short of this is meant when it is said that a marriage valid where made will be upheld in other states, etc. Appellant cites an English case, *Hyde v. Hyde*, L. R. 1 Prob. & Div. 130 (5 E. R. C. 833, 14 L. T. Rep. N. S. 188), which was an action for divorce from a marriage consummated in the state of Utah between persons professing the Mormon faith, which allowed polygamy. The court said that marriage is one and the same thing substantially all the Christian world over, and that it is regarded as a different thing—a different status—from marriages among infidel nations, because the plurality of wives should never be recognized; that the infidel marriage is something different from the Christian; and that the Christian marriage is the same everywhere. It was said that all that the courts of one country have to determine is whether or not the thing called marriage—the known relation of persons—that relation which those courts are acquainted with, and know how to deal with—has been validly contracted in the other country where the parties professed to bind themselves. If the question is answered in the affirmative, a marriage has been had; the relation has been constituted. Another English case is cited: *Bethel v. Hildyard*, L. R. 38 Ch. Div. 220 (58 L. T. Rep. N. S. 674), an action involving the legitimacy of children of a marriage which took place in South Africa, in territory within the control of a semibarbarous tribe of natives. The man was an

Englishman, and the woman a member of the tribe.  The marriage was celebrated according to the custom of the tribe, which permitted the husband to take other wives.  The court seemed to concede that the marriage would be valid and entitled to recognition in England, if, notwithstanding the custom referred to, the parties had intended to contract a marriage, in the Christian sense.  In that case, the evidence was held insufficient to establish such an intention.

The evidence was such that the commissioner could properly have found, as he did find, that a legal marriage was intended and performed, in the instant case.  We think there is a presumption against an incestuous or illegal marriage.  It is shown that deceased took only one wife.  While he could have taken four, it is not shown that a marriage to one only is not commonly practiced in that country, or that such a marriage would be illegal.  Neither is it shown that it was the intention of deceased to take other wives, or that his wife intended that he should.  The marriage between deceased and claimant was not in itself polygamous; and we think that the marriage status, as it existed between them, was the same as exists in this country, under our institutions of marriage.  Under our statute, Code Section 3139, marriage is a civil contract.  The one man took this one woman to be his wife.  Nothing shows that they were not capable of entering into other contracts.

Appellee cites *Hills v. State of Nebraska,* 57 L. R. A. 155, and note, as bearing upon these propositions.  It is contended by appellee that recognition of a union of the kind under consideration, if it be the first union between the parties, does not necessarily countenance polygamy, and that it is only the recognition of similar subsequent unions that could be repugnant to the public policy of our laws.  It is unnecessary to determine that question, since it affirmatively appears that there were no subsequent marriages by deceased.  Without further discussion of this question, we think the commissioner was justified in finding a legal marriage.

2.  It is next contended by appellant that deceased divorced his wife, or at least that she is estopped from claiming otherwise, for that she acquiesced in the alleged divorce.  It should be kept in mind that there was

3. DIVORCE:
   presumption.

no divorce attempted under the laws of this state, where the party attempting such divorce was domiciled, but that the alleged attempt by deceased to divorce his wife was under a foreign law and custom. As stated, the evidence shows that what was done was not sufficient, under the foreign law, to constitute a divorce. In *Cruize v. Billmire*, 69 Iowa 397, a husband and wife had been separated for a good many years. There was no record evidence that the parties had been divorced. The husband stated at different times that a divorce had been granted, and some of his neighbors so understood. It was not shown that the wife ever denied the fact. The husband thereafter deeded property, without the wife's consent; and it was held that she was entitled to a distributive share therein. The court said, in part:

"A divorce cannot be thus established, for the reason that in this country there must at one time have existed record evidence of such fact. Counsel for the defendant, however, insist that, although no record evidence of a divorce has been introduced, one should be presumed. That such a rule obtains, and has been held applicable in some instances, is undoubtedly true. * * * But our attention has not been called to any authority which holds that such rule has been held applicable in any case where neither party has been married again, or has lived and cohabited with another person as husband or wife, and we think no authority can be found which so holds. As we understand, the presumption can only be invoked in aid of innocence and the legitimacy of offspring; nor does it always obtain even in such cases. * * * Because the parties lived separate and apart for so many years, and the fact that the defendant purchased land in reliance on the fact that there had been a divorce, * * * the defendant insists that the plaintiff is estopped from claiming a distributive share for his ward in the land. It is well settled that it is no defense to an action for dower * * * that the defendant is a purchaser in good faith without notice. * *, * The mere fact that the parties lived separate and apart from each other will not create an estoppel."

Whatever talk there was about a marriage by deceased and a Cedar Rapids woman was engineered by defendant's brother, and, as said, deceased had nothing to do with it, nor did his

wife, the claimant herein. We think the instant case is ruled by the *Cruize* case. It is unnecessary to pursue the subject further.

Other questions are argued; but, as said, they relate, to a considerable extent, to a discussion of the evidence, and upon the assumption that there is no conflict. Under the entire record, we think that neither the district court nor this court would be warranted in interfering with the finding of the commissioner on any of the grounds authorized by the statute. The judgment is—*Affirmed.*

WEAVER, EVANS, ARTHUR, and FAVILLE, JJ., concur.