Betty J. JAMES and Raymond Miller,
Appellants,

v.

Walter HEADLEY, Chief of Police of the
City of Miami, Appellee.

No. 25892.

United States Court of Appeals
Fifth Circuit.

April 9, 1969.

Alfred Feinberg, Bruce S. Rogow, Mi-
ami, Fla., for appellants.

Lucy S. Forrester, William H. Tray-
lor, Atlanta, Ga., amicus curiae.

John G. Thomas, Charles K. Allan, Wil-
liam M. Porter, Miami, Fla., for appellee.

Before WISDOM, GODBOLD, and
SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

The question this case presents is
whether an accused has the right to
court-appointed counsel when charged
with only "a petty offense", that is, an of-
fense carrying the maximum penalty of
six months.[1]  This gets down to whether

---

1.  62 Stat. 684 (1948), 18 U.S.C. § 1 de-
fines a petty offense as "any misdemeanor,
the penalty for which does not exceed im-
prisonment for a period of six months
or a fine of not more than $500, or both".

Harvey v. Mississippi, 5 Cir. 1965, 340 F.2d 263, is viable. If it is, do the petitioners before us come under aegis of *Harvey*? We hold that the right to counsel, as articulated in *Harvey*, is alive and well and living in this circuit, and applies to the present case.

On November 19, 1967, Betty J. James was arrested in Miami, Florida, for the theft of dresses valued at $35. She was charged with five offenses: petty larceny, resisting arrest, and three separate counts of assault and battery upon an officer. She remained in jail until her trial in Municipal Court two days later. Raymond Miller was arrested at the same time as Miss James and was charged with petty larceny and resisting arrest. He also remained in jail and was tried simultaneously with Miss James.

Miss James and Miller pleaded not guilty but were found guilty on all counts. Each received the maximum sentence of 60 days for each count, Miss James for a total of 300 days and Miller for a total of 120 days. Each was fined $500 for each count or, in lieu of payment, an additional 60 days for each count, thereby subjecting Miss James to a potential sentence of 600 days and Miller to a sentence of 240 days. Later, the fines were suspended.

The proceeding now before us began as a class action for an injunction. Miss James and Miller, on behalf of themselves and others similarly situated, sought to have the district court enjoin "the defendant Judges and City Prosecuting Attorney from continuing to try plaintiffs and the class they represent without first providing appointed counsel for them, unless said plaintiffs and their class expressly and knowledgeably waive their right to counsel".[2] The theory of the complaint was that the defendants' practices violated the plaintiffs' (petitioners') constitutional rights and entitled them to injunctive relief under 42 U.S.C. § 1983.[3] The district court, correctly, we think, treated the complaint as a petition for habeas corpus, eliminating the class action and injunctive aspects of the complaint.

■■ At the habeas hearing both petitioners testified that they were not informed that they could have counsel or, if they could not afford counsel, that a lawyer would be appointed to represent them. Taking the evidence in a light most favorable to the appellee, we find that the record supports the petitioners' contention and that there was no waiver of the right to counsel.[4] The district court denied the writ, principally on the

---

2. *Miss James and Miller also sought to enjoin Headley, "his servants and employees from failing to advise plaintiffs and the class they represent of their right to appointed counsel at the time they are taken into custody"; to enjoin "the defendant Judges from entering sentences which incarcerate plaintiffs and their class solely because of their inability to pay monetary fines imposed against them"; to enjoin "the setting of unreasonable bond by police officers without a judicial hearing to determine the facts relevant to securing the appearance of the plaintiffs and their class at trial"; to "[s]et aside the convictions of the plaintiffs and the class they represent who were tried by the defendant Judges and their predecessors in office without first being advised of their right to appointed counsel and having counsel appointed for them"; to "[s]et aside that part of the convictions of plaintiffs and the class they represent which incarcerates them solely because of*

*their inability to pay the fines imposed";* and to "[r]elease the plaintiffs and the class represented from the custody of the respondents upon their own recognizance or some other method which will assure their appearance pending the final determination of this case".

3. *Section 1983 reads as follows:*
    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4. The Municipal Court Judge did not recall whether he advised the petitioners of their right to counsel. It was his policy

authority of Brinson v. State of Florida, S.D.Fla.1967, 273 F.Supp. 840 and Cheff v. Schnackenberg, 1966, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629. *Brinson* held that persons charged with petty offenses, as defined in 18 U.S.C. § 1, are not entitled to court-appointed counsel. Cheff v. Schnackenberg held that persons charged with petty offenses are not entitled to a jury trial. All members of the panel are in agreement with the foregoing (and with part III of this opinion relating to elimination of the class action and injunctive aspects of the complaint and treatment of the case as a habeas proceeding). All agree that the district court erred in concluding that *Harvey* has lost its vitality. We find it very much alive. And the present case, like McDonald v. Moore, 5 Cir. 1965, 353 F.2d 106, is sufficiently similar to *Harvey* to justify granting the habeas writ. All concur in reversal. My brother judges do not join in parts I and II * of the opinion.

## I.

The Sixth Amendment to the United States Constitution provides as follows:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the Witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence.

In Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, the Supreme Court held that the right to counsel guaranteed in the Sixth Amendment is a fundamental right essential to a fair trial under the due process requirement of the Fourteenth Amendment. *Gideon* involved a felony, but the language of the opinion, like that in the Sixth Amendment, is broad enough to apply to all criminal offenses.

In *Harvey* the petitioner sought to overturn a conviction for "possession of whiskey" that had been based upon a guilty plea offered without notice of the right to an attorney's advice. The offense was a misdemeanor under Mississippi law, carrying a maximum penalty of a $500 fine and 90 days in jail. A Justice of the Peace testified that Harvey had come to his house at night, three days after the arrest, for the specific purpose of pleading guilty. The Court held that the failure at that time to advise the petitioner of his right to appointed counsel violated the requirements of the Sixth and Fourteenth Amendments as interpreted in *Gideon*. Judge Tuttle, for the Court, reasoned:

It is true that the cases which support appellant's argument all involved felony convictions, but their rationale does not seem to depend on the often purely formal distinction between felonies and misdemeanors. One accused of crime has the right to the assistance of counsel before entering a plea because of the disadvantageous position of an unassisted layman in a court of law and because of the *serious consequences* which may attend a guilty plea. Such disadvantages and consequences may weigh as heavily on an accused misdemeanant as on an accused felon. The record reveals that the guilty plea entered in the case at bar had *grievous consequences indeed.* 340 F.2d at 269. (Emphasis added.)

We quoted with approval the following language from Evans v. Rives, 1942, 75 U.S.App.D.C. 242, 126 F.2d 633:

It is * * * suggested * * * that the constitutional guaranty of the right to the assistance of counsel in a

___

he testified, to so advise accuseds. The district judge made no findings, but did state that he was "inclined to find factually that the petitioners were advised of their right to counsel".

* All agree that the district court erred in treating each count as standing alone for the purposes of calculating the possible sentence.

criminal case does not apply except in the event of 'serious offenses.' No such differentiation is made in the wording of the guaranty itself, and we are cited to no authority, and know of none, making this distinction. The purpose of the guaranty is to give assurance against deprivation of life or liberty except strictly according to law. The petitioner would be as effectively deprived of his liberty by a sentence to a year in jail for the crime of non-support of a minor child as by a sentence to a year in jail for any other crime, however serious. *And so far as the right to the assistance of counsel is concerned, the Constitution draws no distinction between loss of liberty for a short period and such loss for a long one.* 126 F.2d at 638. (Emphasis added.)

We conclude that "the reasoning in *Evans* along with other recent right-to-counsel decisions persuades us that we should apply that rule in the present case". 340 F.2d at 271.

The reliance on *Evans*, which rejected the "serious offense" concept, and the reference in *Harvey* to "serious consequences" and "grievous consequences" are not inconsistent if we bear in mind that in each case the court focused its attention on the lack of any real distinction between a felony and a misdemeanor: the consequences of a misdemeanor may be as serious to an accused misdemeanant as to an accused felon. Any loss of liberty would be serious. And any unassisted layman in a court of law is at a disadvantage.

McDonald v. Moore, 5 Cir. 1965, 353 F.2d 106, reaffirmed the position we took in *Harvey*. McDonald was sentenced to serve six months in the county jail or pay a fine of $250 for the illegal sale of half a pint of gin and the illegal possession of two half-pints of gin and nine pints of bourbon. Judge Jones, who sat on the panel in *Harvey*, speaking for the Court, noted the difficulty in drawing a line:

It seems unlikely that a person in a municipal court charged with being drunk and disorderly, would be entitled to the services of an attorney at the expense of the state or the municipality. Still less likely is it that a person given a ticket for a traffic violation would have the right to counsel at the expense of the state. If the Constitution requires that counsel be provided in such cases it would seem that in many urban areas there would be a requirement for more lawyers than could be made available. 353 F.2d at 108, 109.

Nevertheless, the Court specifically refused the suggestion to adopt as "a rule of thumb * * * the denial of counsel in petty offenses as defined in 18 U.S. C.A. § 1": the suggestion "would provide a rule of certainty and one which might be fair in most situations" but "it would be difficult to sustain on any legal ground". 353 F.2d at 109, n. 4. The Court concluded, without setting forth any criterion, to rest its grant of the writ on the similarity of the facts to those in *Harvey*.

Recently, in Goslin v. Thomas, 5 Cir. 1968, 400 F.2d 594, this Court approved *Harvey* and *McDonald*. That case involved a misdemeanor for which the petitioner was given a sentence of one year in jail. The Court stated that it did "not consider the question of the delineation of a petty offense rule", but at the same time it "note[d] that the maximum penalty in the *Harvey* case, supra, was only a fine of $500.00 and confinement for 90 days". 400 F.2d at 598. Judge Gewin, for the Court, observed: "Even though *Gideon* involved a felony under Florida law, the language used in the opinion makes no attempt to differentiate between felonies and misdemeanors, but rather seems to support the argument that the right to counsel is essential in all criminal prosecutions."

## II.

The district judge here was thoroughly familiar with the case law. As I noted earlier, he based his holding on *Brinson*, a decision in which he distinguished *Harvey* and *McDonald*. *Brinson* had been

convicted of seven traffic offenses, two of which were punishable by imprisonment for a year. The district court held that "the seriousness of the offense charged has direct bearing on the constitutional right to counsel", citing In re Gault, 1967, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. "It is my opinion that the right to assistance of counsel applies to state court prosecutions for *serious* offenses, whether they be labeled felonies or misdemeanors. * * * The right to assistance of counsel is determined by the seriousness of the offense, measured by the gravity of the penalty to which the defendant is exposed on any given violation. * * *" 273 F.Supp. at 843. Seriousness is determined by the maximum possible penalty. "[T]he minimum offense for which counsel must be provided is one which carries a possible penalty of more than six months imprisonment." 273 F.Supp. at 845. Accordingly, the court vacated Brinson's convictions for leaving the scene of an accident involving personal injuries, since these offenses, although misdemeanors, were punishable by more than six months in prison. The six-month standard was based on 18 U.S.C. § 1, defining a petty offense as "any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both".

A. We note, first, that none of the charges against Miss James and Miller, *taken individually*, could have resulted in imprisonment for more than sixty days. But Miss James faced a total sentence of 300 days and Miller a sentence of 120 days, and twice that length of time if unable to pay the fines that were imposed (although later suspended). The district court here, as in *Brinson*, treated each count as standing alone:

> (T)here seems to be no basis in reason or justice whereby any person merely by committing a series of misdemeanors, each entailing a separate

charge, arraignment, trial and sentence, could create a unique constitutional right for himself by cumulating the total of the punishments possible for his several wrongdoings.

We cannot accept this conclusion. We consider it unrealistic to assume that criminal offenders are likely to compound their violations of the law for the purpose of securing free legal counsel at their subsequent trials. The total punishment should be the guide.

The seriousness of a criminal conviction bears no necessary relation to the length of the sentence. A single day is one day too many if an *innocent* person is convicted, especially of an offense to which special public opprobrium attaches because the offense involves moral turpitude. But the length of imprisonment is a rough measure of society's judgment as to the degree of inherent baseness. Thus in *Gault* the Supreme Court said, "If they [petitioners] were unable to afford to employ counsel, they were entitled in view of the seriousness of the charge and the potential commitment,[5] to appointed counsel." 387 U.S. 42, 87 S.Ct. 1451. Assuming, however, that the length of the punishment is a relevant factor in determining the right to counsel, it is a false measure to weigh only the largest of its component parts. If a *guilty* person is convicted, the sum of the potential penalties is what is important to him— and to society. If Harvey's sentence of 90 days and McDonald's sentences of six months on each of two counts entitled them to court-appointed counsel, the potential sentences of 300 (600) and 120 (240) days for Miss James and Miller, respectively, triggered their right to counsel.

B. In *Brinson* the district court construed *Gault* as having established the "serious offense rule". It is clear that in *Gault* the Court regarded the seriousness of the offense as a relevant factor in determining the right to counsel.

---

5. The Court pointed out in a footnote that the commitment, "in virtually all cases, is for a minimum of three years since jurisdiction of juvenile courts is usually limited to age 18 and under". 387 U.S. at 36, 87 S.Ct. at 1448.

But that is far indeed from the Court's adopting a rule of thumb defining seriousness as more than six months imprisonment. *Gault* involved a juvenile delinquency proceeding in which a youth fifteen years old was adjudged "delinquent" and was committed to a state institution.[6] The Supreme Court said, "the issue * * * whether the child [would] be found to be 'delinquent' and subjected to the loss of his liberty for years [was] comparable in seriousness to a felony prosecution". Of course, there is no doubt that a person accused of a felony is, under *Gideon*, entitled to counsel. But *Gault* does not preclude a holding that a lesser offense than a felony might still entitle an accused to counsel.

C. The six-months standard adopted in *Brinson* comes from the definition of a petty offense in 18 U.S.C. § 1 and the Criminal Justice Act of 1964, 18 U.S.C. § 3006A. The Criminal Justice Act of 1964 established a plan for the systematic appointment and compensation of appointed counsel—in all cases other than petty offenses. Procedures for the appointment of counsel in petty offenses are left as they were before the Act. The Act is simply a congressional plan for furnishing representation, at federal expense, to defendants who are financially unable to obtain an adequate defense. Section 3006A does not purport to touch the constitutional right to counsel "in all criminal prosecutions".

The Criminal Justice Act of 1964 came about as a result of the Report of the Attorney General's Committee on Poverty and the Administration of Federal Criminal Justice (1963). The original proposed subsection (b) of 18 U.S.C. § 3006A provided for the appointment and compensation of counsel for indigent defendants "in every criminal case in which the defendant appears without counsel". Report, Appendix II, "The Criminal Justice Bill: Text and Commentary", at 147. The subsection was changed in Conference Committee to its present language. According to "Conference Report No. 1709", the official statement of the Managers on the part of the House of Representatives, the following explanation is given for the change in the language of the statute:

> The bill as passed by the Senate is restricted in scope to felonies and misdemeanors other than petty offenses. The House version of the bill would cover all criminal cases, including petty offenses. * * * *The constitutional mandate of the Sixth Amendment is without doubt applicable to petty offenses,* but it is the view of the conferees that adequate representation may be afforded defendants in such cases without the need for providing for *compensation for counsel.* In this way, money appropriated under the act will not be dissipated from the areas of greatest need, cases involving representation for crimes punishable by more than six months' imprisonment. Conf.Rep. 1709, U.S.Code Cong. and Admin. News (88th Cong., 2nd Sess.1964), v. II, p. 3000. (Emphasis supplied.)

Thus Congress, if it could, never intended to change the petty offender's right to counsel; it merely limited the cases for which compensation was to be provided.

In 1966 the Supreme Court amended subsection (a) of Rule 44 of the Rules of Criminal Procedure to read as follows:

> Rule 44. Right to and assignment of counsel. (a) Right to assigned counsel. Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings from his initial appearance before the commissioner or the court through appeal, unless he waives such appointment. (As amended effective July 1, 1966).

The note of the Advisory Committee on Rule 44 reads, in part, as follows:

> Like the original rule the amended rule provides a right to counsel which is broader in two respects than that for

---

6. See note 5.

which compensation is provided in the Criminal Justice Act of 1964:

(1) The right extends to petty offenses to be tried in the district courts, and

(2) The right extends to defendants unable to obtain counsel for reasons other than financial.

The Criminal Justice Act of 1964 is not authority for a public policy restricting the right to counsel in all petty offense cases. It sets standards for determining when counsel should be compensated in federal courts; it does not purport to limit fundamental rights under the United States Constitution.

D. The appellees contend, however, that recent Supreme Court decisions regarding jury trial establish six months as the minimum penalty to which Sixth Amendment rights, including the right to counsel, attach. If the contention is correct, of course, our previous decision in *Harvey* no longer controls the outcome here.

In the first of the jury cases, Cheff v. Schnackenberg, 1966, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629, the Court of Appeals for the Seventh Circuit had convicted the petitioner of *criminal contempt* and sentenced him to six months in jail.[7] The Supreme Court rejected his claim that under the Sixth Amendment no such sentence could be imposed without the offer of trial by jury. It held the contempt proceedings to be "equivalent to a procedure to prosecute a petty offense, which under our decisions does not require a jury trial".[8] 384 U.S. at 379, 86 S.Ct. at 1525.

Last term in Duncan v. Louisiana, 1968, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, and its companion case, Bloom v. Illinois, 1968, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522, the Court elaborated on the right to a jury trial. Duncan had been tried on a charge of simple battery, a misdemeanor punishable by a fine of $300 or less and a sentence not to exceed two years. The Supreme Court held that regardless what the state calls the crime, a crime punishable by two years in prison is sufficiently serious to entitle the defendant to a trial by jury. The Supreme Court in *Duncan* recognized for the first time that the jury-trial guarantee of the Sixth Amendment was incorporated into the Fourteenth Amendment. At the same time the Court noted that the category of crimes described as "petty offenses" lies outside the constitutional requirement of a jury trial.

The appellee erred in equating the right of trial by jury to the right to counsel.[9] Because a charge is petty enough to lie outside the jury-trial re-

---

7. The contempt statute, 18 U.S.C. § 401, sets no ceiling upon the penalties that federal courts may impose.

8. In a dissenting opinion, concurred in by Mr. Justice Black, Mr. Justice Douglas said that (1) "the determination of whether an offense is 'petty' also requires an analysis of the nature of the offense itself" and (2) "to the extent that the penalty is relevant in this process of characterization, it is the *maximum potential* sentence, not the one actually imposed, which must be considered". 384 U.S. at 387, 86 S.Ct. at 1528.

9. In an often-cited article, Justice (then Professor) Frankfurter and Thomas G. Corcoran show that at the time the Constitution and Bill of Rights were framed, petty offenses were tried without a jury in England, the colonies, and the newly constituted states; the absence of debate on this in the Federal Convention and the First Congress indicate that the Founding Fathers did not intend to abolish the prior summary practice. Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harv.L.Rev. 917 (1926). (But see Kaye, Petty Offenders Have No Peers, 26 U.Chi.L.Rev. 245 (1959).

In contrast to the right to trial by jury, an accused in England had the right to be represented by counsel in cases involving trivial petty offenses and misdemeanors but not in felonies, except as to questions of law the defendant himself might suggest. The rule as to felonies persisted until 1836. See the exposition in Powell v. Alabama, 287 U.S. 45, 60, 53 S.Ct. 55, 77 L.Ed. 158; Beaney, Right to Counsel (1953), 8–26. Unlike its treatment of the Sixth Amendment right of jury trial, the Supreme Court, in the cited cases, has

quirement does not mean that it is also petty enough to allow suspension of the right to counsel. The petty-offense exception has not been applied uniformly to all Sixth Amendment rights. On the contrary, In re Oliver, 1948, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682, held the Sixth Amendment right to a public trial to be applicable to state proceedings although only a 60-day sentence was involved. An "accused is at the very least entitled to have his friends, relatives *and counsel present, no matter with what offense he mal be charged*". 333 U.S. at 272, 68 S.Ct. at 507. Moreover, at the time *Oliver* was written, the petty-offense exception respecting the right to jury trial had long since been recognized by the Supreme Court in Callan v. Wilson, 1888, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223, as the Court later noted in *Cheff.* The authors of *Oliver,* therefore, did not take the application of the exception to one Sixth Amendment right to imply its necessary extension to others.

There are other persuasive reasons for distinguishing the right to counsel from the right to a jury trial. The right to a lawyer's advice is peculiarly important in an accusatorial legal system such as ours. The elaborate defensive weapons courts and legislatures have fashioned for the individual are valueless if he lacks the understanding to use them. In a sophisticated adversary system the aid of a competent attorney is necessary to ensure that constitutional rights of an accused are not lost in an unequal struggle of wits.[10] And it is necessary to ensure the reliability of the system for purposes of determining the guilt of the accused.[11] The Supreme Court, in *Gideon,* put the point this way:

> From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him. 372 U.S. 344, 83 S.Ct. 796, 9 L.Ed.2d 805.

See also Powell v. Alabama, 1932, 287 U.S. 45, 64, 53 S.Ct. 55, 77 L.Ed. 158 [12]

held that the inclusion of the right to counsel in the Sixth Amendment was intended as a rejection of the limitations which had existed in England and as an extension of the right to counsel to those classes of offenses from which it had been withheld at common law. There is nothing, however, in the history of the Sixth Amendment to suggest that at the same time the Framers of the Constitution also intended to withdraw the right to representation in cases involving lesser offenses in which it had existed at common law.

10. "[T]he importance of counsel also proceeds from values transcending the interests of any individual defendant. Counsel is needed to maintain effective and efficient criminal justice. Ours is an adversary system of justice, which depends for its vitality upon vigorous and proper challenges to assertions of governmental authority and accusations of crime. Reliance upon the judge or prosecutor to protect the interests of defendants is an inadequate substitute for the advocacy of conscientious defense counsel. Limiting the right to counsel 'gravely endangers judicial search for truth.' " President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 52–53 (1967).

11. Mr. Chief Justice Warren observed in Johnson v. New Jersey, 384 U.S. 719, 728, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966): "We concluded that retroactive application was justified because the [right to counsel] affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent' ".

12. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissable. He lacks both the skill and knowledge adequately to prepare his defense, even though he has a perfect one. He requires the guiding

and Johnson v. Zerbst, 1938, 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461.

The jury, of course, is a treasured part of the American system of criminal justice but it occupies a less fundamental position than the right to counsel in a criminal case because it is not so interwoven with other rights. During the oral argument in Goslin v. Thomas, the State requested the Court to withhold its decision until after the Supreme Court should render its decision in *Duncan.* After the Supreme Court decided *Duncan,* this Court, in *Goslin,* said, "The rationale of *Duncan* supports the Fifth Circuit rule (as laid down in *Harvey*) in our opinion. Surely it does not undermine or erode our former decisions. Indeed, the right to counsel may be more important than the right to a jury trial if the two are to be compared. It often happens that the only effective means of securing other valuable constitutional rights is through competent counsel." 400 F.2d 598.

Trials are daily held before a judge alone without derogation to the right against self-incrimination, the right to confront witnesses, the right to object to improper evidence, the right to a speedy trial, or the right to compulsory process for obtaining witnesses. The same cannot be said of trials at which the defendant lacks an attorney's aid. And none of these rights turn upon the seriousness of the offense for which the defendant is tried.

The more fundamental nature of the right to counsel is also reflected in the fact that *Gideon* has been applied retroactively,[13] while *Duncan* and *Bloom,* encompassing the right to jury trial, have not been so applied.[14] Similarly, appointed counsel, unlike jury trial, is now guaranteed to petty offenders by the Federal Rules of Criminal Procedure.[15]

We conclude, therefore, that the petty offense exception to the right to trial by jury does not require the imposition of a co-extensive exception to the right to appointed counsel. We agree with the Supreme Court of Minnesota in State v. Borst, 1967, 278 Minn. 388, 154 N.W.2d 888, 894:

> At first blush it would seem that as far as Federal constitutional rights are concerned, decisions holding that it is not necessary to have a jury trial in all cases are controlling because both are derived from the Sixth Amendment as applied to the states by the Fourteenth Amendment. * * *
>
> But even though the two rights derive from the same provisions of our Federal Constitution, they are not of equal significance when it comes to the matter of obtaining a fair trial. It is conceivable that a fair trial may be had before an impartial judge without a jury, but it is hardly conceivable that a person ignorant in the field of law can adequately defend himself without the assistance of counsel. Consequently, we do not consider the cases involving the right to a jury trial controlling in this area.

E. Judges Godbold and Simpson would rest the holding squarely on *Harvey.* The author of this opinion would go further. I start with the general principle that the Sixth Amendment establishes the right to counsel in *"all* criminal prosecutions"*. There is, therefore, no constitutional distinction between felonies and misdemeanors, between gross and petty offenses, between the loss of liberty for 181 days and the loss of liberty for 180 or fewer days.[16]

---

hand of counsel at every step of the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. Powell v. Alabama, 287 U.S. 45, 68, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

13. Pickelsimer v. Wainwright, 1963, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41.

14. DeStefano v. Woods, 1968, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308.

15. Fed.R.Crim.P. 44.

16. See also the following cases in which state courts have held that counsel must be appointed in all criminal prosecutions which might result in depriving an accused of his liberty: People v. Witenski, 1965,

Nevertheless, if accuseds should be provided counsel in *all* petty offense cases, the great constitutional right to counsel could be carried to absurdity; city and state systems of justice could be so overburdened as to break down. There are simply not enough lawyers to go around. Some pragmatic solution must be found so that even a law violator will be willing to admit that his pulling flowers in the park or his parking overtime are not important enough to require the city or state to furnish him a lawyer. Some sort of "serious offense" rule or "significant penalty" rule would be useful in providing certainty and reducing the heavy burden of providing counsel. The problem is how to give judicial recognition to exceptions when the Constitution does not in terms allow exceptions.

The ancient principle, *de minimis non curat lex*, provides a lawful, logical, and practicable basis for excluding trifling criminal prosecutions. This is a dull blade with which to cut a hard knot. But in the thinking of the average citizen, non-serious cases such as most traffic cases are not *criminal* prosecutions. Moreover, there is something to be said for flexibility, when a rigid standard jeopardizes either fair trial procedures or the effective administration of the courts.

I take the position that regardless of labels, an offense is serious enough to require appointment of counsel if it may result in the loss of liberty for any period of time. I agree with the standard fixed in the American Bar Association Project on Minimum Standards for Criminal Justice (1967):

> Counsel should be provided in all criminal proceedings for offenses punishable by loss of liberty, except those types of offense for which punishment is not likely to be imposed, regardless of their denomination as felonies, misdemeanors or otherwise.

Even when no loss of liberty results from a conviction, counsel should be appointed whenever "moral turpitude", often having extra-legal consequences, attaches to the offense, e. g., petit larceny. "Moral turpitude" is a term used as a test in a number of situations and one that is sufficiently definite to serve as a standard.[17] For example, although no social stigma attaches to parking overtime,[18] stigma does attach to the offense of drunken driving or to a hit-and-run driver's fleeing the scene of an accident.[19]

The objective should be to extend rather than limit the right to counsel. As pointed out in the ABA Project on Minimum Standards:

> Minor offenses may have major significance in terms of the interests to be served by providing defense services. It is at this level that the largest number of people confront the administration of criminal justice. If they

15 N.Y.2d 392, 259 N.Y.S.2d 413, 207 N.E. 2d 358; Bolkovac v. State, 1951, 229 Ind. 294, 98 N.E.2d 250; Hunter v. Oklahoma, Okla.Cr., 1955, 288 P.2d 425; City of Toledo v. Frazier, 1967, 10 Ohio App.2d 51, 226 N.E.2d 777; State ex rel. Barth v. Burke, 1964, 24 Wis.2d 82, 128 N.W.2d 422; City of Tacoma v. Heater, 1966, 67 Wash.2d 733, 409 P.2d 867; State v. Blank, 1965, 241 Or. 627, 405 P.2d 373; In re Johnson, 1965, 62 Cal.2d 325, 42 Cal.Rptr. 228, 398 P.2d 420; and People v. Mallory, 1967, 378 Mich. 538, 147 N. W.2d 66 (Concurring Opinion).

17. See Kamisar and Choper, The Right to Counsel in Minnesota: Some Field Findings and Legal-Policy Observations, 48 Minn.L.Rev. 1, 69, no. 292 and text for note.

18. See People v. Letterio, 1965, 16 N.Y.2d 307, 266 N.Y.S.2d 368, 213 N.E.2d 670.

19. As Mr. Justice Stewart emphasized in dissenting from the denial of certiorari in Winters v. Beck, 385 U.S. 907, 908, 87 S. Ct. 207, 208, 17 L.Ed.2d 137 (1966), "No State should be permitted to repudiate [the right to counsel] by arbitrarily attaching the label 'misdemeanor' to a criminal offense." See also Taylor, The Supreme Court: The Individual and the Criminal Process, 1 Ga.L.Rev. 386, 434 (1967). In this connection it is interesting that in the District of Columbia v. Clawans, 1937, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843, the Court ruled that "reckless driving" cannot be classified as a "petty offense", notwithstanding a maximum penalty of 30 days or $100.

are to develop respect for its processes it must treat them fairly; and providing counsel to those unable to retain their own is essential to the development of that respect. Moreover, those who are charged with major offenses often have a record of prior convictions for minor ones. This suggests the importance of using the processes of the law at the level of minor offenses to try to prevent recidivism and reverse the tendency of petty criminality to lead to aggravated forms of antisocial conduct. Providing counsel at the lower levels may counter to some degree the pressure to mass-produce justice and in this and other ways serve the ends of rehabilitation.

There may be cases in which it is appropriate for the court to appoint counsel, even though there is no likelihood of a jail sentence and it is doubtful that there is any moral turpitude. For example, revocation of a license may deprive the licensee of his livelihood. Or, considering a particular defendant's limited intelligence, the complexity of the issues to the individual may justify appointment of counsel.[20]

Returning now to James and Miller, I would hold that the loss of liberty and the seriousness of the alleged offenses bring this case within the ambit of the Sixth Amendment with or without the aid of *Harvey*.

## III.

■ We come next to the appellants' contention that the district court erred in dismissing their class action for injunctive relief under Section 1983 and transforming it into a simple habeas proceeding. They argue that their complaint stated proper grounds for both equitable and class relief. It is basic learning that a court will not grant equitable relief if there is an adequate remedy at law.

■ Here the legal remedy of appellate review will be wanting only if the originally named defendant police officers and judges ignore the *stare-decisis* effect of *Harvey* as we interpret it today.[21] Moreover, regardless of whether an injunction or a previous decision supports his right to counsel, a defendant deprived of the right must raise the point on his own. A breached injunction, like the disregard of judicial precedent, cannot be corrected unless the wronged party complains. The legal remedy

20. Mr. Justice Douglas in his dissent in Bute v. People of State of Illinois, 333 U.S. 640, 682, 68 S.Ct. 763, 784, 92 L.Ed. 986 (1948) said: "It might not be nonsense to draw the Betts v. Brady [316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595] line somewhere between that case [a sentence to imprisonment up to twenty years] and the case of one charged with violation of a parking ordinance, and to say the accused is entitled to counsel in the former but not in the latter * * * yet it is the *need* for counsel that establishes the real standard for determining whether the lack of counsel rendered the trial unfair. * * * That need is measured by the *nature* of the *charge* and the *ability* of the *average* man to face it alone, unaided by an expert in the law." Winters v. Beck, D.C., 281 F.Supp. 793 (1968). In Creighton v. North Carolina, E.D.N.C.1966, 257 F.Supp. 806 the Court held: "(t)his court thinks it wiser to follow the lead of Mr. Justice Douglas when he said that the need for counsel is measured by the nature of the charge (which would include the possible penalty) and the ability of the average man to face it without the aid of counsel, and use this standard as a partial guide to aid the trial judge in the exercise of his discretion. This provides a much more flexible and, the court believes, a much more satisfactory solution to the problem. It recognizes that not every misdemeanor above a traffic violation requires the appointment of counsel while admitting that some cases of traffic violations can be imagined where appointment of counsel should be considered." 281 F.Supp. 793 at 798.

21. "It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings." Dombrowski v. Pfister, 1965, 380 U.S. 479, 484–485, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22, 27.

available here is adequate, or at least no less so than the equitable remedy sought.

Considerations of federalism and the proper operation of our federal courts in relation to those of the states make the equitable intervention requested here all the more delicate. The appellants would have the district court place a prior restraint upon state officers and state judges in their enforcement of state laws. This case falls within the reach of Douglas v. City of Jeanette, 1942, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324,[22] not within McNeese v. Bd. of Education, 1963, 373 U.S. 668, 83 S.Ct. 1433,[23] 10 L.Ed.2d 622; Lankford v. Gelston, 4 Cir. 1966, 364 F.2d 197;[24] or Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22.[25]

The right to appointed counsel is not of the sort that suffers impairment solely by virtue of state prosecution in disregard of it. The people named as the plaintiff class here will not be inhibited in the conduct of their daily activity by our refusal to intervene in the state criminal process at this stage. Moreover, no statute is cited that by its mere presence on the books seems to threaten the plaintiffs' protected behavior, as the Court's later interpretation of *Dombrowski* seems to require.[26] Circumstances justifying federal interference with the activities of state officers have therefore not been alleged by the plaintiffs. We conclude that the court below did not err in dismissing the § 1983 complaint.

Our holding makes unnecessary any decision upon the aptness or propriety of the plaintiff class originally named in the complaint. If no injunction can be had, of course, there is no reason to make this proceeding into a suit for class relief. Absent the granting of the pro-

22. "The power reserved to the states under the Constitution to provide for the determination of controversies in their courts may be restricted by federal district courts only in obedience to Congressional legislation in conformity to the Judiciary Article of the Constitution. Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent * * *." 319 U.S. at 162–163, 63 S.Ct. at 880–881, 87 L.Ed. at 1329.

23. In McNeese v. Bd. of Education, the Supreme Court held that federal intervention did not have to await the exhaustion of state remedies in a school desegregation case. There was no method of orderly appeal available from state to federal courts. If the uncertain administrative procedures failed, the plaintiffs would have to begin again at trial level in the federal district court.

24. In Lankford v. Gelston, the Baltimore police had engaged in a series of flagrantly unconstitutional searches while pursu-

ing the suspected killers of two of their colleagues. The court upheld the injunction of such searches, noting specifically that since the plaintiffs were innocent of any wrongdoing, they would not have the usual trial at which they could vindicate their right of privacy by excluding evidence improperly seized.

25. In Dombrowski v. Pfister, the plaintiffs, active leaders in a civil-rights organization, complained that state officials were violating their constitutional rights by prosecuting them, or threatening to do so, under Louisiana's Subversive Activities and Communist Control Law and Communist Propaganda Law. The Supreme Court agreed, holding that the statute was so broad on its face as to discourage or "chill" activity protected by the First Amendment. The Court based its holding on this "chilling" effect of the statute at issue: "(t)he allegations in this complaint depict a situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights. They suggest that a substantial loss or impairment of freedoms of expression will occur if appellants must await the state court's disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury." 380 U.S. at 486, 85 S.Ct. at 1120, 14 L.Ed.2d at 28.

26. See Cameron v. Johnson, 1968, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182.

tection sought, there is no decree that can be extended to others than Miller and Miss James.

In summary, we hold that the court properly dismissed the complaint as filed, but erred in its denial of the application for a writ of habeas corpus. The case is remanded for disposition consistent with this opinion.[27]

---

27. Walter Headley, who was a defendant in the original complaint and the respondent in the habeas proceeding, died subsequent to the argument on appeal. Under F.R.A.P. 43(c), (1) his successor, Acting Chief of Police of the City of Miami Paul M. Denham, automatically becomes the appellee in this case which is re-styled accordingly.