Gibson J. PERCK

v.

C. Murray HENDERSON, Warden Louisiana State Penitentiary
(two cases).

Misc. Nos. 1090, 1092.

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

Sept. 1, 1970.

Gibson J. Perck, in pro. per.

Jack P. F. Gremillion, Atty. Gen., State of La., Jack E. Yelverton, Asst. Atty. Gen., State of La., Baton Rouge, La., for respondent.

WEST, Chief Judge:

These consolidated applications for a writ of habeas corpus are brought pursuant to Title 28, U.S.C.A. § 2254. In each case petitioner claims that he is being unlawfully detained in state custody on the ground that he was not provided with assistance of counsel at his criminal trial for Theft or at a subsequent probation revocation hearing. The record discloses that the petitioner, Gibson J. Perck, is presently confined in the Louisiana State Penitentiary at Angola, Louisiana, serving a five year sentence for Theft. When he first pleaded guilty to that charge before the state court, that court, exercising the discretion accorded to it in LSA-C.Cr.P. art. 893, suspended execution of the five year sentence and placed him on supervised probation for a period of five years subject to the general conditions provided by Louisiana law, and providing also that he make complete restitution of the sum of $156.00, the proceeds of the Theft, in monthly installments of $20.00 each with the first installment due one month from the date of sentencing.

At the time of petitioner's conviction for Theft on June 21, 1966, he was at liberty in the status of a supervised probationer as the result of a former conviction on April 19, 1965, for the crime of Forgery. For that offense he had been sentenced to confinement at hard labor for a term of two years but the execution of that sentence had been suspended and a two year probationary period imposed. Because petitioner's subsequent conviction for Theft in 1966 so obviously violated the general conditions which qualified the probation ordered after his former conviction for Forgery, LSA-C.Cr.P. art. 895, he was, on September 16, 1966, ordered confined to the Louisiana State Peniten-

tiary to begin serving his previously suspended two year sentence for the Forgery conviction LSA-C.Cr.P. art. 901. He was released in January 1968, and does not complain herein of any defects, real or imagined, arising out of the proceedings connected with his conviction for Forgery.

However, sometime thereafter, the District Supervisor of the Thibodaux District of the Louisiana Probation and Parole Office advised the state court which had tried and sentenced petitioner for Theft in 1966 that, following his release from Angola in January 1968, he had repeatedly failed to comply with or, after being warned, acknowledge the conditions of probation which had been imposed on him when the execution of his five year sentence for that offense had been suspended. According to the Probation and Parole Office, in addition to being arrested in Assumption Parish for issuing worthless checks, petitioner appears at the very least to have (1) failed to make complete restitution of the proceeds of the Theft, (2) failed to discharge his economic responsibilities toward his family, and (3) failed to render timely reports to his probation officer on his then current employment and whereabouts. On January 13, 1969, therefore, after conducting a probation revocation hearing in accordance with LSA-C.Cr.P. art. 900, the 18th Judicial District Court for the State of Louisiana revoked its original order suspending the execution of petitioner's sentence and placing him on probation, and, as one of the discretionary sanctions permitted by Article 900 of the La. Code of Criminal Procedure, ordered him to begin serving immediately the five year sentence for Theft because of his repeated probation violations which the court found, at the hearing, to have occurred. Petitioner does not now deny that he breached the conditions of his probation, but contends instead that (1) he was not represented by counsel at trial or at the subsequent probation revocation hearing held on January 13, 1969, and (2) after his pro-

bation was revoked, he was not, so he claims, presented to the authorities at the Louisiana State Penitentiary with the proper "commitment papers" necessary for incarceration therein. Complying with the requirement imposed by Title 28, U.S.C.A. § 2254 that state remedies be exhausted before turning to the federal courts for habeas relief, petitioner has twice before presented the contentions urged herein to the state courts of Louisiana with, as far as he is concerned, negative results. On May 28, 1969, after conducting a thorough evidentiary hearing in this matter, the 18th Judicial District Court, without written opinion, denied petitioner's application to that Court for a writ of habeas corpus. Subsequently, on July 21, 1969, the Louisiana Supreme Court, without written opinion, did likewise. State ex rel. Perck v. Henderson, 254 La. 515, 225 So.2d 7 (1969). After carefully considering the evidence adduced before this Court in an evidentiary held on June 24, 1970, and after carefully studying the transcript of the like evidentiary hearing held before the 18th Judicial District Court on May 28, 1969, this Court, too, for the reasons which follow, denies both of petitioner's applications for writs of habeas corpus as being completely devoid of merit.

■■■ We start with the fundamental proposition that the right to counsel guaranteed in the Sixth Amendment is so essential to the conduct of a fair trial that it must be considered applicable to criminal proceedings had before state courts, and implementation of that right, therefore, requires the appointment of counsel to assist indigent accused. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); LSA-C.Cr.P. art. 511 et seq. Although Gideon involved a noncapital felony (breaking and entering), the United States Court of Appeals for the Fifth Circuit has consistently held that, at least in this Circuit, the rationale of Gideon necessarily extends to accused misdemeanants as well as accused felons wherever the misdemeanor carries with

it exposure to serious consequences upon conviction. Harvey v. Mississippi, 340 F.2d 263 (5th Cir. 1965); McDonald v. Moore, 353 F.2d 106 (5th Cir. 1965); Goslin v. Thomas, 400 F.2d 594 (5th Cir. 1968); James v. Headley, 410 F.2d 325 (5th Cir. 1969). Thus, there can simply be no argument but that the petitioner had an absolute constitutional right to counsel at his 1966 trial for Theft (a felony). The evidence before this Court, however, belies his claim that this right was infringed. Specifically, at the evidentiary hearing held before the 18th Judicial District Court on May 28, 1969, Mr. Philip N. Pecquet, Esq., a practicing attorney in West Baton Rogue Parish, Louisiana, in addition to representing petitioner at the hearing itself, testified that he had been appointed in 1966 to represent petitioner prior to his arraignment on a charge of Theft and that after advising him of the nature of the charge and possible consequences following conviction, petitioner authorized him, Mr. Pecquet, to enter a plea of guilty in his behalf. We note too, that at one point during the course of the hearing petitioner himself even admitted that he had, in fact, been represented by Mr. Pecquet at his trial. There is then, obviously, no merit to petitioner's claim that he was denied such representation.

■■■ Whether or not petitioner was equally entitled to counsel at his subsequent probation revocation hearing on January 13, 1969, presents a somewhat closer question. The starting point here is Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), wherein the Supreme Court, when confronted with a Washington procedure which allowed *sentencing* to be deferred and defendant released on probation until such time as he breached any conditions thereof, held that *sentencing,* deferred or not, was such a critical stage of criminal prosecution that criminal defendants were entitled then, as at trial, to be represented by counsel. This right was deemed so important that in McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32,

21 L.Ed.2d 2 (1968), a per curiam opinion, the Supreme Court applied *Mempa* retroactively. The Louisiana Code of Criminal Procedure makes available an alternative sentencing procedure, similar to that of Washington, by providing that the court "may suspend [either] the *imposition* or *execution* of sentence, and in either case place the defendant on [supervised] probation \* \* \* " (Emphasis added.) LSA-C.Cr.P. art. 893. Petitioner's case, though, did not involve a *deferred* sentencing procedure. The state court sentenced him to confinement at hard labor for a term of five years, and *thereafter,* in the exercise of its discretion, suspended *execution* of the sentence and placed him instead on supervised probation. Moreover, it is abundantly clear from the evidence in this case that petitioner was represented at all critical stages of his trial, including sentencing, by able counsel well-versed in the practice of criminal law and this without more is sufficient, we believe, to remove his case from the purview of *Mempa*. Indeed, in Shaw v. Henderson, 303 F.Supp. 183 (E.D.La. 1969), this very distinction has previously pursuaded this Court to hold that where a habeas applicant has been represented by counsel at sentencing, he is not entitled to assistance of counsel at a subsequent probation revocation hearing. Cf. United States ex rel. Bishop v. Brierly, 288 F.Supp. 401 (E.D.Pa. 1968); Holder v. United States, 285 F.Supp. 380 (E.D.Tex.1968); Sammons v. United States, 285 F.Supp. 100 (S.D. Tex.1968). These decisions rest on the proposition that once a sentence to confinement has been suspended and probation ordered in its place, a subsequent probation revocation hearing, far from being a second trial, is nothing more than the court's determination of whether or not the probationer has violated the conditions of his probation. There is, of course, no constitutional guarantee that the sentencing process must result in a criminal defendant's release on probation. That decision rests in the sound discretion of the trial judge turning in individual cases on such circumstances, among others, as the nature of the crime of which the defendant stands convicted, his past criminal record, his character and attitude, his propensity and willingness for reform, and his adherence to any conditions with which the court qualifies probation. Revocation of probation does not involve the fixing of guilt and does not amount to a "second" sentencing. It is merely the same exercise of discretion on the part of the court which originally allowed the defendant the qualified privilege of serving his sentence on the street instead of in the penitentiary.

We pause now in following those decisions only because the United States Court of Appeals for the Fourth Circuit, in a persuasive opinion, Hewett v. State of North Carolina, 415 F.2d 1316 (4th Cir. 1969), has recently extended the right to counsel to a probation revocation hearing which, unlike *Mempa*, had been preceded by sentencing at which the defendant had also had the benefit of counsel. The rationale of this decision is simply that the prospect of the defendant's "loss of liberty" whether perpetrated at sentencing or at a subsequent probation revocation hearing is a sufficient enough consideration to warrant the appointment of counsel. The United States Court of Appeals for the Fifth Circuit, although indicating its awareness of the dichotomy in the decisions, in Amaya v. Beto, 424 F.2d 363 (5th Cir. 1970), has not yet had an opportunity to consider this question. Until it does so, this Court is of the opinion that if a criminal defendant is represented by counsel at all critical stages of his trial, including sentencing, and is thereafter released on probation, he is *not* thereafter entitled to counsel at a subsequent probation revocation hearing. For all that, there is at least a showing in the record of this case that petitioner was in fact represented by counsel at the probation revocation hearing on January 13, 1969, although no one connected with the case seems to recall his name.

Petitioner also claims that he was not properly admitted to the penitentiary, but this does not rise to the level of a constitutional claim cognizable in a federal habeas proceeding. There is obviously no question but that he was convicted for Theft and sentenced to five years confinement at hard labor.

Petitioner's final claim is that he was, in fact, not guilty of the crime with which he was charged. He says he merely intended to admit that he *owed* the money involved and not that he *stole* it. But the purpose of a federal habeas corpus hearing is not to determine guilt or innocence. That question was resolved adversely to the defendant in the state court and this Court finds no deprivation of constitutional rights in those proceedings.

For these reasons, petitioner's application for Habeas Corpus will be denied and judgment will be entered accordingly.