BOLKOVAC *v.* STATE OF INDIANA.

[No. 28,629. Filed April 19, 1951.]

*Frankenstein & Frankenstein,* of Fort Wayne, for appellant.

*J. Emmett McManamon,* Attorney General; *Charles F. O'Connor* and *Walter O. Lewis,* Deputy Attorneys General, for appellee.

EMMERT, J.—This is an appeal from a judgment convicting appellant of child neglect as charged in the second count of an amended affidavit under § 10-1405, Burns' 1942 Replacement. He was ordered sentenced to the Indiana State Farm for the term of 180 days and fined in the sum of $1.00. The sentence was suspended under Clause 2 of § 10-1406, Burns' 1942 Replacement, on condition that he pay the sum of $15.00 per week for the care and maintenance of the child,

and give bond in the sum of $500 to comply with the terms of the court order.

The only assigned error not waived is the trial court's overruling of appellant's motion for a new trial, which (1) challenges the sufficiency of the evidence to sustain the finding, and (2) asserts that he was deprived of his right to counsel under § 13 of Article 1 of the Constitution of Indiana.

The latter cause was supported by the affidavit of the appellant filed with the motion for new trial, which appears in the transcript immediately following motion for a new trial. The affidavit does not appear in the transcript as a part of a special bill of exceptions, and for this reason the state contends that nothing is presented by the record. Under the rule discussed in *McCallister* v. *State* (1940), 217 Ind. 65, 26 N. E. 2d 391, there are many cases, both before and after this case, which held to the rule that an affidavit in support of a motion for new trial, even though embodied in the transcript following the motion for a new trial, was not properly part of the record for our consideration unless it also appeared in a special bill of exceptions.[a]

However, it is not necessary to decide again how an affidavit in support of a motion for new trial may be brought into the record, since we believe the court's intrinsic record and the bill of exceptions containing the evidence are sufficient to present to the court the question of the violation of the constitutional right to be heard by counsel. See majority opinion in *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 915; *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848. We are entitled to a better record than

---

[a] For a criticism of this rule, see 26 Ind. Law J., p. 99, note (1).

we find, and in order for this court to comply with § 12 of Article 1 of the Constitution of Indiana that "Justice shall be administered . . . completely, and without denial," we should be in a position to protect one of the most valuable rights of any accused on the merits, without being confronted with technical objections on the part of the state which would avoid the constitutional question simply because counsel for appellant failed to follow former precedents of this court.

So far as we are advised, the Supreme Court of the United States has never decided that the due process clause of the Fourteenth Amendment guarantees the right to counsel in the prosecution of a misdemeanor, which was the grade of offense charged here.

However, the decisions of that court on issues arising under due process of the Fourteenth Amendment, and the right to counsel under the Sixth Amendment furnish persuasive precedents for the solution of the chief problem of this appeal. Under the Sixth Amendment persons accused in the federal courts of misdemeanors do have the right to counsel. "The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he waives the assistance of counsel." *Johnson* v. *Zerbst* (1938), 304 U. S. 458, 463, 58 S. Ct. 1019, 1022, 1023, 82 L. Ed. 1461, 1466.[b]

---

[b] This rule was approved in *Foster* v. *Illinois* (1947), 332 U. S. 134, 67 S. Ct. 1716, 91 L. Ed. 1955.

"It [the Sixth Amendment] embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." *Johnson* v. *Zerbst* (1938), 304 U. S. 458, 462, 463, 58 S. Ct. 1019, 1022, 82 L. Ed. 1461, 1465, 1466.

The right to a trial by jury as well as the right "to be heard by himself and counsel." are both contained in § 13 of Article 1 of the Constitution of Indiana. There is no doubt that an accused has the right to a trial by jury in a misdemeanor case. *State ex rel. Rose* v. *Hoffman, Judge* (1949), 227 Ind. 256, 85 N. E. 2d 486. The language of the section, "In all criminal prosecutions," includes prosecutions for misdemeanors.[c]

In two misdemeanor cases this court, without noting that the offenses charged were misdemeanors instead of felonies and without specifically saying the right to counsel existed in misdemeanor cases, disposed of the contentions that there had been a denial of the right to counsel under § 13 of Article 1 on the assumption that the right in such cases did exist. *Blue* v. *State* (1946), 224 Ind. 394, 67 N. E. 2d 377; *Kellums* v. *State* (1943), 221 Ind. 588, 50 N. E. 2d 662.[d] Since § 13 of Article 1 makes no distinction between misdemeanors and felonies, the right to counsel must and does exist in misdemeanor cases to the same extent and under the same rules it exists in felony cases. Many misdemeanors provide substantial punishment by way of fine and imprisonment, and if we held there is no constitutional right to counsel in a misdemeanor case, the legislative door would be open

---

[c] Similar language in § 5 of Article 1 of the 1816 Constitution of Indiana clearly indicates the words "all criminal cases" included misdemeanors, for the section in part stated, "and in all criminal cases excepting petit misdemeanors, which shall be punished by fine only, not exceeding $3.00, in such manner as the legislature may provide by law, the right of trial by jury shall remain inviolate."

[d] In *Decker* v. *State* (1925), 113 Ohio St. 512, 150 N. E. 74, 42 A. L. R. 1151, the Supreme Court of Ohio decided the right to counsel under § 10 of Art. I of the Ohio Constitution existed in misdemeanor cases. See also Anno. 42 A. L. R. 1157.

for the destruction of this right by the simple device of providing for imprisonment in the Indiana State Farm rather than the Indiana State Prison.[e]

The court's intrinsic record here discloses that the 4th day of April, 1949, the firm of Kruse, Kenney and Kennerk entered their appearance for appellant. While he was so represented, on the 11th day of April appellant waived arraignment and entered a plea of not guilty to each count, and the case was set for trial on May 26th. On May 26th the case was reset for trial on June 1st, and on this latter day the order book entry discloses that Kruse, Kenney and Kennerk withdrew their appearance for appellant. The court's order book record then recites that the following proceedings were had:

> "Comes now Alton L. Bloom, Prosecuting Attorney and comes the defendant, Albert Joseph Bolkovac, in person and said defendant having heretofore plead not guilty to the offense of Wife Neglect and Neglecting Child, as charged in the affidavit, this cause is now submitted to the Court for trial without the intervention of a jury. And the Court having heard the evidence and *the* being fully advised in the premises, finds that the defendant, Albert Joseph Bolkovac, is guilty of the offense of Wife Neglect and Neglecting Child, as charged in the affidavit."

It was not until after the judgment had been entered on the finding that other counsel appeared for appellant and filed in his behalf a motion for a new trial. The preliminary recital of the bill of exceptions containing the evidence states, "the State of Indiana was

---

[e] "All crimes and public offenses which may be punished with death or imprisonment in the state prison shall be denominated felonies; all [and] all other offenses against the criminal law shall be denominated misdemeanors." Section 9-101, Burns' 1942 Replacement.

represented by C. A. Lincoln, Deputy Prosecuting Attorney for the Thirty-eighth Judicial Circuit of the State of Indiana, and the defendant was present in person."

The state only introduced one witness to prove the charges, who stated her name was Marjorie Marshall Bolkovac. She testified in substance that the appellant was her husband, with whom she became acquainted in England in 1944 where he was stationed during the war. She was in a hospital about forty miles from his camp and they would see each other on week-ends for about eight months before he returned to this country, which was in June, 1945; when asked if they became engaged during that time she said "Not exactly," but that the two had sexual relations, and as a result thereof a child was born on December 22, 1945; that after he had returned to the United States she had correspondence with his parents about coming to this country, and she used the letters and statements therein for the purpose of obtaining entrance to this country for herself and child, apparently by reason of being his wife and having had the child by him. The passport was exhibited to the judge at the trial, but it was not introduced in evidence nor was any offer made to permit the appellant to examine it; she was met in New York by appellant's relatives who took them to the home of his parents in Pittsburgh. About two weeks later appellant came there where he saw her and the child. After Christmas the defendant requested her to go to Fort Wayne, which they did, and registered her in hotels and introduced her as his wife. That he paid their expenses for about eight weeks.

At the conclusion of her direct examination the deputy prosecutor said to the appellant, "Do you want to ask her any questions? You don't have any lawyer. It's up to you to ask her any questions." His cross-

examination of the prosecuting witness shows the appellant knew nothing about the burden of proof upon the state to prove the material allegations of the charge, what would constitute a ceremonial marriage or a common-law marriage, or how to question the witness to elicit facts consistent with his innocence.[1]

After his attempted cross-examination of the prosecuting witness, the deputy prosecutor stated to the appellant, "Have you got something to say about this now? Then come over and take this chair so we can hear what you've got to say." He took the witness stand and made a statement, which revealed he knew nothing about the legal requirements of a ceremonial

---

[1] [CROSS-EXAMINATION BY ALBERT J. BOLKOVAC, APPELLANT.]

"Q What did you say your name was?

A Marjorie Marshall Bolkovac.

Q How come the Bolkovac?

A I changed it legally.

Q You did?

A Yes.

. . . .

Q I said I had an apartment?

A Yes.

Q I don't remember saying I had one.

THE COURT. Don't argue. You are to ask questions. If you want to testify you can take the witness stand. Right now you're just a lawyer, you're just asking questions.

Q How were you registered at the hotel?

A Mrs. Bolkovac.

Q You were registered that way?

A Yes.

THE DEFENDANT. Anyhow, Judge—

THE COURT. You'll have a chance to testify yourself after while, brother."

marriage or a common-law marriage.[g] The trial court made no effort *sua sponte* to ascertain whether there had ever been a ceremonial marriage or a common-law marriage at any time or place. The deputy prosecuting attorney conducted no examination or cross-examination on this subject matter. Appellant stated his parentage of the child "was a matter of conjecture."

Under § 10-1402, Burns' 1942 Replacement, defining the offense of non-support of a child, "The charge can only be made against one of the legal parents. . . ." *Small* v. *State* (1948), 226 Ind. 38, 42, 77 N. E. 2d 578, 579. The state's position is that appellant is the "legal parent" by reason of a marriage to the prosecuting witness. The only reasonable inference from her testimony is there was no

---

[g] "THE DEFENDANT. What Marj said about us meeting, we met in England. I seen Marj a few times. After I left, Marj corresponded with my mother and dad. I really didn't know she was coming. I didn't know until she was here, I think, or she was on her way; she was in the States already. That's right, I didn't see her until Christmas. I did say that I wanted to bring her here. I didn't know what to do or anything. I tried to get an apartment and I did. I couldn't at the time, so I know I didn't call up and say I had an apartment when I didn't have one. At the hotel I registered my name, that's all, and I didn't know anyone there at that hotel. I did bring up two friends of mine one time during this time. I was always living at 1330 Scott Avenue where I still stay. All during this time I didn't know what to do. It wasn't very nice up there for Marj and Dawn. I went to the Veterans' Aid to try to get some kind of apartment or place for her to stay. So I was still sort of up in the air about quite a few things.

THE COURT. I can't hear you.

THE DEFENDANT. During the time Marj was here I'd go up to see her occasionally. Just like she said, I would pay some of the expenses, but I was working pretty steady then. I was trying to get around to figuring out what to do and, if I was going to marry her, to make a home for her. So Marj—well—I don't know, I really don't know what to say."

ceremonial marriage in England. The validity of a marriage depends upon the law of the place where it occurs. II Beale, *Conflict of Laws*, p. 669, § 121.2; II *Kent's Commentaries* (14th Ed.), p. 128; Restatement, Conflict of Laws, § 122, p. 188; *Roche* v. *Washington* (1862), 19 Ind. 53, 81 Am. Dec. 376. Since 1753 common-law marriages have been outlawed in England. Keezer, *Marriage & Divorce* (3rd Ed., 1946), § 28, p. 42.[h] If a common-law marriage had been attempted in England it would have been invalid here. *Jordan* v. *Missouri & Kansas Telephone Co.* (1909), 136 Mo. App. 192, 116 S. W. 432.

"Marriage is a status resulting from a contract to marry entered into by a man and a woman capable of making such a contract. Cohabitation cannot of itself constitute marriage. It can only be considered as evidence from which the presumption may be indulged that such a contract was entered into. Matters of conduct, reputation and actions are only evidence to the same effect." *Compton* v. *Benham* (1909), 44 Ind. App. 51, 58, 85 N. E. 365, 367. If cohabitation is "illicit in the beginning, it is presumed to continue." *Meehan* v. *Edward Valve, etc., Co.* (1917), 65 Ind. App. 342, 344, 117 N. E. 265, 266. The presumption continues until the contrary is shown. *Dunlop* v. *Dunlop* (1935), 101 Ind. App. 43, 198 N. E. 95. In *Norrell* v. *Norrell* (1942), 220 Ind. 398, 404, 44 N. E. 2d 97, 99, this court quoted with approval the language of Perkins, J. in *Trimble* v. *Trimble* (1850), 2 Ind. 76, 78, on the form of contract of a common-law marriage as follows: "If the contract be made *per verba de presenti,* or if made *per verba de futuro,* and followed by consummation, it amounts to a valid mar-

---

[h] Thirty states do not authorize common-law marriages. Ibid § 28, p. 43.

riage, and which the parties cannot dissolve if otherwise competent."

From the record it is clear appellant knew nothing as to the burden of the state to prove its case beyond a reasonable doubt, or how to defend himself against such a charge of non-support of a legal child. If he had been represented by counsel who was employed or appointed immediately after original counsel withdrew, a refusal of a motion for continuance would have been reversible error under the facts of this record. *Rice* v. *State* (1942), 220 Ind. 523, 44 N. E. 2d 829; *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 915, *supra*. The right to counsel in a criminal prosecution is self-executing and does not depend upon legislative authorization. *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 29 N. E. 2d 405, 130 A. L. R. 1427.

The facts in this record closely parallel the facts in *Gibbs* v. *Burke* (1949), 337 U. S. 773, 69 S. Ct. 1247, 93 L. Ed. 1686, wherein the court held that there had been a denial of due process under the Fourteenth Amendment during a trial on a charge of larceny, of which Gibbs had been found guilty and sentenced for a term of from two and one-half to five years. The record showed "neither a request for counsel by the petitioner nor an offer of counsel by the court," and Gibbs conducted his own defense. The record of the proceedings at the trial showed he was an unskilled layman and incompetent to conduct his defense. The court in reversing the conviction said: "A defendant who pleads not guilty and elects to go to trial is usually more in need of the assistance of a lawyer than is one who pleads guilty. The record in this case evidences petitioner's helplessness, without counsel and without more assistance from the judge, in defending himself

against this charge of larceny."[1] The court's observation on the usual need for counsel aptly applies to appellant's attempt to conduct his own defense.

On the question of waiver, Mr. Justice Black, in *Johnson* v. *Zerbst* (1938), 304 U. S. 458, 465, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1467, *supra*, speaking for the court, said:

"The constitutional right of an accused to be represented by counsel invokes of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."

See *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773. Upon the entire record here it is apparent appellant did not waive his right to counsel, and that he was denied his constitutional right to be heard by counsel.

It is not not necessary to discuss appellant's other contentions of error. The judgment on the amended second count of the affidavit is reversed, with instructions to the trial court to grant a new trial thereon.

NOTE.—Reported in 98 N. E. 2d 250.

---

[1] "A layman is usually no match for the skilled prosecutor whom he confronts in the courtroom. He needs the aid of counsel lest he be the victim of over zealous prosecutors, of the law's complexity, or of his own ignorance or bewilderment." *Williams* v. *Kaiser* (1945), 323 U. S. 471, 476, 65 S. Ct. 363, 366, 89 L. Ed. 398, 402.