John C. MASON, Appellant–Plaintiff,

v.

Bonnie F. MASON, Appellee–Defendant.

No. 06A05–0203–CV–133.

Court of Appeals of Indiana.

Sept. 27, 2002.

John C. Mason, Pendleton, IN, Appellant Pro Se.

Lawrence D. Giddings, Giddings Whitsitt & McClure, Lebanon, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff John C. Mason (John) appeals the dissolution of his marriage to Bonnie F. Mason (Bonnie), the dismissal of his complaint for annulment, the order of property distribution entered by the trial court, and the award of attorney's fees in favor of Bonnie. Specifically, John argues that his marriage was void ab initio because of his degree of kinship to Bonnie and, therefore, the entry of a dissolution order was error. John also contends that the trial court abused its discretion in dismissing his complaint for annulment because he failed to appear at trial. Furthermore, John contends that the trial court abused its discretion in awarding four life insurance policies to Bonnie because the trial court did not consider his deposition testimony when formulating its property distribution order. Finally, John maintains that the trial court lacked juris-

diction to grant attorney's fees because his marriage to Bonnie was void, and the statute awarding attorney's fees only applies in a divorce action dissolving a valid marriage. Concluding that the trial court was correct in dissolving rather than nullifying the marriage, dismissing John's complaint, giving the insurance policies to Bonnie, and awarding attorney's fees in Bonnie's favor, we affirm.

## FACTS

The facts most favorable to the judgment are that in the 1980s, John traveled from Indiana to Tennessee to stay with Bonnie, his first cousin. John and Bonnie were then married in Tennessee in 1986. As first cousins under sixty-five years of age, John and Bonnie could not legally be married in Indiana. However, Tennessee has no such prohibition. Apparently, both John and Bonnie knew about Indiana's law. Three months after their marriage, they returned to Indiana.

Since 1991, John has been committed to the Indiana Department of Corrections on a murder conviction. During this time, Bonnie has received no significant funds from John. She has, however, contributed funds to support John's two children from a previous marriage. After being incarcerated, John instructed Bonnie to transfer assets into her name, and Bonnie did so. Specifically, Bonnie made herself the beneficiary of four life insurance policies on John's life. Bonnie allowed the cash value of the policies to pay the policies' premiums.

On January 10, 2000, John filed for an annulment on grounds that his marriage to Bonnie was void under Indiana Code section 31–11–8–3, which prohibits marriage between first cousins unless such cousins are at least sixty-five years old on the date

of the marriage. On March 23, 2000, Bonnie filed an Answer to John's complaint and a Counterclaim, seeking dissolution of her marriage to John on the grounds that the marriage was irretrievably broken. On November 2, 2000, John was deposed, and the deposition was filed with the trial court on December 5, 2000. After several delays, a bench trial was set for January 11, 2002. John's attorney, with court permission, withdrew his appearance on November 12, 2001. On January 11, 2002, Bonnie appeared with counsel, but John was absent. Bonnie's counsel orally moved to dismiss John's complaint for failure to prosecute. The trial court granted the motion because of John's absence. The trial court found that the Masons' marriage was valid under the Full Faith and Credit Clause of the United States Constitution,[1] granted Bonnie's request for dissolution, and awarded her all the marital property including the four life insurance policies. The trial court also awarded Bonnie attorney's fees. John now appeals.

## DISCUSSION AND DECISION

### I. Validity of the Marriage

John first contends that the trial court's ruling that his marriage was valid is contrary to law. Specifically, John argues that he and Bonnie are first cousins that married in contravention of Indiana Code section 31–11–8–3, which reads as follows:

> A marriage is void if the parties to the marriage are more closely related than second cousins. However, a marriage is not void if: (1) the marriage was solemnized after September 1, 1977; (2) the parties to the marriage are first cousins; and (3) both of the parties were at least sixty-five (65) years of age when the marriage was solemnized.

---

1. U.S. Const. art. IV, § 1.

Tennessee Statute section 36–3–101 [2], which addresses consanguinity of parties to a marriage, permits a marriage between first cousins without requiring that they be at least sixty-five years of age.

■■■ We first note that Indiana's recognition of the existence of a foreign marriage is a matter of comity. *Roche v. Washington*, 19 Ind. 53, 54 (1862). This court has held that comity "represents a willingness to grant a privilege, not as a matter of right, but out of deference and good will." *State Bd. of Registration for Prof'l Eng'rs v. Eberenz*, 701 N.E.2d 892, 895 (Ind.Ct.App.1998) (citing *County of Ventura v. Neice*, 434 N.E.2d 907, 910 (Ind.Ct.App.1982)). Indiana courts need not apply a sister state's law if such law violates Indiana public policy. *Maroon v. State Dep't of Mental Health*, 411 N.E.2d 404, 410 (Ind.Ct.App.1980).

■■■ On comity grounds, Indiana will accept as legitimate a marriage validly contracted in the place where it is celebrated. *Bolkovac v. State*, 229 Ind. 294, 304, 98 N.E.2d 250, 254 (Ind.1951). In *Bolkovac*, the defendant was convicted for failure to support a child. As required by the statute, the State alleged that Bolkovac was the legal parent of the child because he was married to the child's mother, whom Bolkovac met while stationed in England with the United States military. The child's mother testified that no ceremonial marriage had taken place. Our supreme court reversed Bolkovac's conviction because the State failed to prove that Bolkovac was married to the child's mother. *Id.* at 255. The *Bolkovac* court observed that

uncontroverted testimony established that no ceremonial marriage occurred, and the court noted that common law marriage had been outlawed in England since 1753. Consequently, no marriage existed in England for Indiana to recognize. Had a ceremonial or common law marriage existed in England, Indiana could have recognized the marriage. *Id.*

■■■ In this case, both parties admit to being first cousins. Appellant's App. p. 5, 22. They also concede that they were married in Tennessee and that Tennessee allows first cousins to marry. Appellant's App. p. 70, 181. Additionally, no statute such as Indiana Code section 31–11–1–1(b) [3] exists to establish that a marriage such as John and Bonnie's violates Indiana's public policy. As a matter of comity, Indiana can choose to recognize Tennessee marriages between first cousins, even though such a marriage could not be validly contracted between residents of Indiana. Thus, the trial court committed no error in recognizing John and Bonnie's marriage as valid.

## II. Dismissal of John's Complaint

John next asserts that the trial court abused its discretion in dismissing his complaint on the day of trial. Specifically, John states that dismissal is a drastic measure that should not have been employed, especially considering his incarceration and concomitant inability to travel freely to take part in legal proceedings.

■■■ In resolving this issue, we first note that a dismissal for failure to prosecute will be reversed only for a clear abuse

---

**2.** Tennessee Statute section 36–1–101 reads as follows: "Marriage cannot be contracted with a lineal ancestor or descendant, nor the lineal ancestor or descendant of either parent, nor the child of a grandparent, nor the lineal descendants of husband or wife, as the case

may be, nor the husband or wife of a parent or lineal descendant."

**3.** Indiana Code section 31–11–1–1(b) reads: "A marriage between persons of the same gender is void in Indiana even if the marriage is lawful in the place where it is solemnized."

of discretion. *Hill v. Duckworth,* 679 N.E.2d 938, 939 (Ind.Ct.App.1997). Such an abuse of discretion occurs only if the trial court's decision is against the logic and effect of the facts and circumstances before it. *Lee v. Friedman,* 637 N.E.2d 1318, 1320 (Ind.Ct.App.1994). *Hill* is dispositive in this case. In *Hill,* a plaintiff's complaint against the State Reformatory was dismissed because Hill did not show up for trial. In affirming the trial court, this court held that failure to be present on the day of trial is a "good ground for dismissal." *Hill,* 679 N.E.2d at 939. Additionally, the fact that Hill was confined raises no implication of an abuse of discretion by the trial court because trial judges "cannot be asked to carry cases on their dockets indefinitely" until a prisoner is released. *Id.* Finally, as the *Hill* court stated, the inability to pursue civil actions because of incarceration is "an incident of punishment." *Id.* at 940.

■ As in *Hill,* the trial court did not abuse its discretion in dismissing John's complaint. Like Hill, John was missing on the day of trial. Such an act is a "good ground for dismissal." *Id.* at 939. The fact that John is incarcerated is, as in *Hill,* of no moment, as the inability to be present at a civil trial is "an incident of punishment." *Id.* at 940. Finally, we fail to see any prejudice accruing to John. As his marriage is valid, his complaint for an annulment could not have been granted because his marriage to Bonnie was not void ab initio. Thus, the trial court did not abuse its discretion in dismissing John's complaint.

### III. Property Division

John contends that the trial court abused its discretion in formulating its property settlement. Specifically, John alleges that the trial court erred by not awarding him four life insurance policies because the court did not take into account his deposition testimony, in which he stated that he had ordered Bonnie to transfer one life insurance policy to each of his two children, Adam and Pam. Appellant's App. p. 102. John also maintained that the other two policies were to remain in his name. *Id.*

■ In reviewing a trial court's division of marital assets, we apply an abuse of discretion standard. *Macher v. Macher,* 746 N.E.2d 120, 124 (Ind.Ct.App.2001). We may not re-evaluate the evidence or assess the credibility of witnesses, and we consider only the evidence most favorable to the trial court's property settlement. *Id.* Under Indiana Code section 31–15–7–5, an equal division of property is presumed. However, this presumption may be overcome by evidence of the "contribution of each spouse to the acquisition of the property." [4]

John asserts that the trial court did not consider his deposition testimony in framing the property division. Appellant's Br. p. 21. Specifically, John points to the fact that in his deposition, he testified that the life insurance policies were to be divided up "one to Adam and one to Pam; and my two was [sic] to stay in my name." Appellant's App. p. 102–03. The record, however, provides no indication that the trial court ignored John's deposition testimony.

■ In this case, the record provided ample evidence for the trial court to award all the marital assets, including the life insurance policies, to Bonnie. Bonnie testified that John told her to place the insurance policies in her name and, if necessary, use the funds for living expenses. Appellant's App. p. 187. Since the policies were in Bonnie's name, she was entitled to the

---

**4.** I.C. § 31–15–7–5(1).

cash value of the policies. However, she did not use the cash value to which she was entitled for current needs but allowed the cash value to "roll-over" and pay the premiums on the policies. *Id.* at 188. Bonnie thus ensured that the policies were still in effect. Moreover, Bonnie has received no financial support from John or his family for eleven years. *Id.* at 183. On the contrary, Bonnie has actually helped support John's children from a prior marriage. *Id.* at 189. Even if the trial court had considered John's deposition testimony, the trial court still would have had sufficient grounds to award the life insurance policies to Bonnie in light of the circumstances here. Consequently, we cannot say that the trial court abused its discretion in awarding Bonnie the four life insurance policies as part of the property settlement.

### IV. Attorney's Fees

John maintains that the trial court lacked jurisdiction to grant attorney's fees in this case because his marriage to Bonnie was void, and the statute awarding attorney's fees applies only in a divorce action dissolving a valid marriage.

■ In reviewing a trial court's award of attorney's fees, we apply an abuse of discretion standard. *Baker v. Baker,* 488 N.E.2d 361, 364 (Ind.Ct.App. 1986). A trial court has wide discretion in awarding attorney's fees. *Selke v. Selke,* 600 N.E.2d 100, 102 (Ind.1992). We will reverse such an award only if the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* The trial court may look at the responsibility of the parties in incurring the attorney's fees. *Hanson v. Spolnik,* 685 N.E.2d 71, 80 (Ind.Ct.App. 1997). Furthermore, the trial judge possesses personal expertise that he or she may use when determining reasonable attorney's fees. *Bower v. Bower,* 697 N.E.2d 110, 115 (Ind.Ct.App.1998).

■ In reviewing John's claim, we first note that this court has held that if a marriage is void, then the trial court lacks jurisdiction to award attorney's fees. *Rance v. Rance,* 587 N.E.2d 150, 153 (Ind. Ct.App.1992). As stated above, however, John and Bonnie's marriage is considered valid in Indiana. Thus, the trial court could properly consider Bonnie's request for an award of attorney's fees with regard to her counterclaim for dissolution. Ind. Code § 31–15–10–1. Had John not initiated this litigation, Bonnie may never have incurred the attorney fees at issue. Furthermore, the trial judge was in the best position to determine whether attorney's fees were warranted in these circumstances. We cannot say that the trial court abused its discretion in awarding Bonnie attorney's fees.

### CONCLUSION

In light of the disposition of the issues set forth above, we conclude that the trial court was correct in finding that John and Bonnie's marriage was valid. We also conclude that the trial court did not abuse its discretion in dismissing John's complaint, awarding the life insurance policies to Bonnie, and awarding attorney's fees to Bonnie.

Judgment affirmed.

VAIDIK, J. and BARNES, J., concur.