# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MARGO R. BABINEAUX**
Meinzer & Babineaux LLC
St. John, Indiana

ATTORNEY FOR APPELLEE:

**BARBARA A. BOLLING**
Gary, Indiana



FILED
Dec 12 2012, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PONZIANO CONSTRUCTION SERVICES INC., | ) ) ) | |
| Appellant-Plaintiff, | ) ) | |
| vs. | ) ) | No.   45A05-1112-CC-661 |
| QUADRI ENTERPRISES, LLC, | ) ) ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Calvin D. Hawkins, Judge
Cause No.  45D02-1003-CC-288

**December 12, 2012**

**OPINION – FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Ponziano Construction Services, Inc. ("Ponziano") appeals the trial court's decision granting partial recovery on its breach of contract claim against Quadri Enterprises, LLC ("Quadri"), denying foreclosure on its mechanic's lien, and granting partial attorney's fees based on its mechanic's lien. We reverse the trial court's award of $16,000 on the Contract and its denial of Ponziano's request to foreclose on its mechanic's lien; affirm the trial court's award of $8,000 in attorney's fees to Ponziano; and remand with instructions to the trial court to enter judgment in favor of Ponziano for $48,483.43, order sale of the property subject to the $45,549.43 lien, and determine the existence, extent, and outcome of a potential priority dispute between Ponziano and Wells Fargo.

**Issues**

Ponziano raises four issues for our review, which we consolidate and restate as:

I.    Whether the trial court erred in awarding Ponziano only $16,000 on the April 30, 2009 contract ("the Contract");

II.   Whether the trial court erred in denying foreclosure on Ponziano's mechanic's lien; and

III.  Whether the trial court abused its discretion in awarding Ponziano only $8,000 in attorneys' fees.

**Facts and Procedural History**

On April 30, 2009, Dr. Kamartaj Quadri ("Dr. Quadri"), as owner of Quadri, contracted with Ponziano to construct a medical office ("the building") on the site of a

2

pre-existing structure at 200 South West Street, Crown Point, Indiana.[1] Under the Contract, Quadri was to pay Ponziano $144,900. After execution of the Contract, Dr. Quadri turned over all negotiations for and supervision of the construction to her husband, Syed Quadri ("Syed"). In that capacity, Syed was present at the construction site almost daily throughout the construction process.

Syed and Ponziano discussed changes to the Contract, including installation of a metal roof instead of an asphalt shingle roof, lowering of the grade of the building, alteration of the handicap access ramp, and the cost of asbestos removal. Ponziano drafted an addendum to reflect these changes ("the Addendum"), and presented it to Syed. Neither Dr. Quadri nor Syed signed the Addendum, but Syed, working through a registered architect, changed the blueprints for the building to reflect the changes in the Addendum, and filed the changed blueprints with the State of Indiana and the City of Crown Point. Ponziano constructed the building largely in accordance with the revised blueprints.[2]

To finance the project, Quadri obtained a construction loan from Wells Fargo. Quadri and Ponziano agreed to payment in the form of three draws on Wells Fargo, each to be made at specified stages of completion of the building, and each to be authorized by

---

[1] At the time the Contract was formed, the address of the site was 200 West Walnut Street. At some point between the execution of the Contract and the creation of the blueprints on file with the State of Indiana and the City of Crown Point, the street address of the site was changed to 200 South West Street.

[2] Ponziano disputes the trial court's conclusion that the Addendum did not modify the Contract. Because the evidence is without conflict and leads only to the conclusion that the Addendum modified the Contract, the trial court's conclusion that the Addendum did not modify the Contract is clearly erroneous. See Clark v. Hunter, 861 N.E.2d 1202, 1206 (Ind. Ct. App. 2007). However, we do not address this issue separately because the Addendum does not materially change the stated price of the Contract, which is the dispositive issue as discussed infra.

3

Quadri. Quadri released the first two draws to Ponziano, for $44,029.14 and $47,587.43 respectively. Subsequently, Quadri complained to Ponziano about the quality of workmanship for various items in the building, and withheld release of the third draw pending resolution of its concerns. When discussions between the parties failed, Ponziano filed a mechanic's lien against the building in the amount of $45,549.43 with the Lake County Recorder's office on January 8, 2010.

On March 18, 2010, Ponziano filed a three-count complaint alleging breach of contract and unjust enrichment, and seeking foreclosure of its mechanic's lien and attorney's fees. On May 21, 2010, Quadri filed an answer and counterclaim, alleging breach of contract, slander of title, and breach of an implied warranty of good workmanship. The trial court conducted a bench trial on November 3-5, 2011, and ordered both parties to file proposed findings of fact and conclusions of law. On November 21, 2011, the trial court entered, in relevant part, the following findings of fact and conclusions thereon:

## FINDINGS OF FACT

1. That the Plaintiff[] . . . contracted with the Defendant[] . . . with the express purpose of constructing a medical office structure at 200 W. Walnut Street, Crown Point, Indiana.

. . .

3. That subsequent to the contract date of April 30, 2009, PONZIANO submitted an "Addendum" to QUADRI which was not signed. This document called for the elimination of the handicap ramp and the asphalt shingle roof in exchange for the installation of a metal roof. It also provided for the elimination of a basement leaving a crawl space in its place. Five Hundred ($500.00) Dollars was to be added to the contract amount for the removal of asbestos material from the job site.

4

4. That the total cost of construction was to be One Hundred Forty Four Thousand Nine Hundred ($144,900.00) Dollars.

. . .

6. That construction was shut down by the City of Crown Point for a two week period in July, 2009 for QUADRI'S failure to file a landscape design with the City of Crown Point.

7. That QUADRI was never issued an occupancy permit until October 20, 2009. Despite not being issued an occupancy permit prior to that date, QUADRI moved all of its office equipment, furniture and cabinets from its old office into the new structure while work was still being performed by PONZIANO.

8. That as a result of items being moved into the new structure prior to work being completed PONZIANO workers were hindered in fulfilling their duties, which duties included painting, taping and trim work.

9. That there was no punch list presented from QUADRI to PONZIANO, showing items that QUADRI felt should have been completed. Moreover, there was no walk-through performed by either party prior to QUADRI taking occupancy of the premises.

10. That QUADRI listed the following items that did not comport with good workmanship of PONZIANO:

    (a) window in the handicapped restroom was broken

    (b) varnish stains on the tile floor in the employee break area

    (c) screens at five (5) of the windows were missing

    (d) light in the employee bathroom as not working properly

    (e) nail holes were not filled in

    (f) countertops were not properly installed; edging was coming off; edging not properly trimmed on six (6) of the seven (7) units; caulking very sloppy

    (g) poor painting throughout the entire office, i.e., primer showing through

    (h) foundation defect which caused the floor to slope in the patient waiting area and the employee break area

    (i) AT & T [sic] phone lines were not installed.

11. That QUADRI paid PONZIANO about sixty (60%) percent due it.

12. That PONZIANO'S evidence substantiated that work was performed in ninety (90) days of the date of the filing of the lien which comported with I[.]C[.] [§] 32-28-3 et al.

13. That PONZIANO'S lien action entitles it to recover reasonable attorney fees pursuant to I[.]C[.] [§] 32-28-3-14.

14. That there was no evidence or showing that the filing of the lien was improper.

## CONCLUSIONS OF LAW

5

1. That the parties entered into a contract on April 30, 2009 for construction of a medical office structure at 200 W. Walnut Street, Crown Point, Indiana now known as 200 South West Street, Crown Point, Indiana.

. . .

3. That there is due and owing to PONZIANO from QUADRI the sum of Sixteen Thousand ($16,000.00) Dollars.

4. That pursuant to I[.]C[.] [§] 32-28-3-14(a) PONZIANO is entitled to reasonable attorney fees. The court now awards attorney fees to PONZIANO in the sum of Eight Thousand ($8,000.00) Dollars incurred by ROBERT L[.] MEINZER, JR.

5. The Court finds no damages against PONZIANO on QUADRI'S Counter-Claim other than QUADRI'S off-setting damage claim for PONZIANO for work poorly performed.

(App. at 5-8.) The trial court entered judgment for Ponziano in the amount of $16,000, and awarded Ponziano attorneys fees in the amount of $8,000. Ponziano now appeals.

**Discussion and Decision**

The trial court issued specific findings of fact and conclusions of law sua sponte.[3] A general finding or judgment will control as to issues upon which the trial court has not expressly found, and special findings will control only as to those issues that they cover. Clark, 861 N.E.2d at 1206. We will reverse special findings only when they are clearly erroneous, that is, when a review of the record leaves us firmly convinced that a mistake has been made. Id. A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it, and we will disturb the judgment only when there

---

[3] In its "Findings of Fact," the trial court states "[t]hat QUADRI listed the following items that did not comport with good workmanship of PONZIANO[,]" and lists several items Quadri claims are examples of Ponziano's poor workmanship. (App. at 7.) As "[o]ur Supreme Court has explained, 'A court . . . does not find something to be a fact by merely reciting that a witness testified to X, Y, or Z. Rather, the trier of fact must find that what the witness testified to is the fact.'" Moore v. Jasper Cnty. Dep't of Child Servs, 894 N.E.2d 218, 224 (Ind. Ct. App. 2008) (quoting In re T.J.F., 798 N.E.2d 867, 873 (Ind. Ct. App. 2003)). Here, the "Finding of Fact" in question is no finding at all, but rather a mere recitation of the evidence.

6

is no evidence supporting the findings or the findings fail to support the judgment. Id. However, we will affirm a general judgment upon any legal theory consistent with the evidence. Id. We neither reweigh the evidence nor judge the credibility of the witnesses. Id.

Breach of Contract

Ponziano contends that Quadri owes $51,587 on the Contract, and that the trial court erred in awarding Ponziano damages of only $16,000. Specifically, Ponziano argues that the trial court should have awarded it the balance of the full amount of the Contract as modified by the Addendum because Syed admitted that Ponziano had completed almost all of the work with only cosmetic repairs remaining, the trial court found that Ponziano received 60% of the price of the contract but made no finding as to the corresponding percentage of work provided by Ponziano, and the trial court made no finding as to the value of any offsetting claims of Quadri.

The computation of damages is a matter within the discretion of the trial court, and mathematical certainty is not required. Gasway v. Lalen, 526 N.E.2d 1199, 1203 (Ind. Ct. App. 1988). However, the amount awarded must be supported by evidence in the record, and may not be based on mere conjecture, speculation, or guesswork. Id. In a breach of contract case, the measure of damages is the loss actually suffered because of the breach. Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC, 870 N.E.2d 494, 507 (Ind. Ct. App. 2007).

When the specific issue on review relates to a question of inadequate or excessive damages, we will not reverse a damage award if it is within the scope of the evidence

7

before the trial court, and we neither reweigh the evidence nor judge the credibility of the witnesses. Randles v. Ind. Patient's Comp. Fund, 860 N.E.2d 1212, 1230 (Ind. Ct. App. 2007), trans. denied. To the extent Ponziano argues it did not receive the entire amount it sought at trial and now seeks on appeal, it appeals from a negative judgment. Clark, 861 N.E.2d at 1206. Ponziano may prevail only if it establishes that the judgment is contrary to law, that is, the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion but the trial court reached a different conclusion. Id.

The Contract was a fixed-price contract pursuant to which Ponziano agreed to complete the construction for $144,900.[4] The Addendum added $500 to the stated price of the contract. Other than the Addendum, the record does not disclose a change order signed by either party or to which either party agreed. Therefore, the Contract price of $145,400, as modified by the Addendum prevails. Having been paid $91,616.57, Ponziano is still owed $53,783.43, absent reduction. See Four Seasons Mfg., Inc., 870 N.E.2d at 507. Quadri seeks to reduce the $53,783.43 owed to Ponziano by claiming damages due to delays in construction and defective work.

*Delay*

---

[4] Indiana cases include and refer to the term "fixed-price," but our research reveals no Indiana case that provides an explicit definition of such a contract. The Supreme Court of the United States has stated that "[a] pure fixed-price contract requires the contractor to furnish the goods or services for a fixed amount of compensation regardless of the costs of performance, thereby placing the risk of incurring unforeseen costs of performance on the contractor[.]" Bowsher v. Merck & Co., Inc., 460 U.S. 824, 826 n. 1 (1983) (citation omitted). Black's Law Dictionary defines the term as "[a] contract in which the buyer agrees to pay the seller a definite and predetermined price regardless of increases in the seller's cost[.]" BLACK'S LAW DICTIONARY 321 (7th ed. 1999). Furthermore, we note that the terms "fixed-price" and "stipulated sum" have been used interchangeably. See Stelko Elec., Inc. v. Taylor Cmty. Sch. Bldg. Corp., 826 N.E.2d 152, 165 (Ind. Ct. App. 2005) (providing a similar definition for the term "stipulated sum contract").

Dr. Quadri claims that the delayed opening of the office negatively impacted her business, causing her to lose new patients, to be unable to attend to her current patients, and to lose business she would have earned from October influenza vaccinations. (Tr. at 525.) Furthermore, Dr. Quadri allegedly lost approximately $12,000 to $15,000 of income during the period in which she could not see patients in her new office. (Tr. at 527-28.)

Neither the Contract nor the Addendum specifies a date certain for completion of the building. (App. at 13-16; Plaintiff's Ex. 4.) When the parties to an agreement do not fix a date certain for performance, the law implies a reasonable time. The Winterton, LLC v. Winterton Investors, LLC, 900 N.E.2d 754, 764 (Ind. Ct. App. 2009), trans. denied. What constitutes a reasonable time depends upon the subject matter of the contract, the circumstances attending the performance of the contract, and the situation of the parties to the contract. Id. However, a party cannot impede performance of the contract and then claim damages due to delay of performance. Scott-Reitz Ltd. v. Rein Warsaw Assoc., 658 N.E.2d 98, 104 (Ind. Ct. App. 1995) (citing Maddox v. Wright, 489 N.E.2d 133, 137 (Ind. Ct. App. 1986) (where the actions or conduct of one party to a contract prevent the other from performing his part, the other's nonperformance will be excused)).

Here, Quadri moved into the office on September 30, 2009, twenty days before the occupancy permit was issued, and before Ponziano had finished construction. (Tr. at 71-72.) At trial, Ponziano presented testimony that the presence of Quadri's equipment and furniture in the building impeded efforts to finish construction. (Tr. at 73.) Furthermore,

9

Ponziano presented testimony that Quadri caused other delays, such as a two-week delay because the State of Indiana required a new blueprint after Quadri changed the building plans; a two-week delay caused by Quadri's failure to file a landscape design with the City of Crown Point, and a one-week delay because Quadri wanted to change the size of certain windows. (Tr. at 52-53; App. at 6.) While Quadri's ability to open for business may have been delayed due to construction efforts, a substantial portion of any such delay was self-imposed. As such, Quadri cannot now claim damages based on delay of performance. See Scott-Reitz Ltd., 658 N.E.2d at 104.

*Defective Workmanship*

Quadri further claims that it is entitled to set-off Ponziano's recovery on the Contract because of Ponziano's poor workmanship. The evidence discloses that there were several defects in the construction by Ponziano, including a broken window (Tr. at 507), varnish stains (Tr. at 507, 513), screens missing from windows (Tr. at 508-09), a non-working light (Tr. at 508-09), unfilled nail holes (Tr. at 379-80), improperly installed countertops (Tr. at 511), countertops with separated edging (Tr. at 509-10), sloppy caulking around countertops (Tr. at 513), primer showing through wall paint (Tr. at 509), a foundation defect causing floor sloping (Tr. at 457-61), and non-functional phone lines (Tr. at 507). However, the only evidence Quadri presented at trial regarding the cost of fixing the defects was a price of $4,800. (Tr. at 379-80.) Therefore, the only set-off to which Quadri is entitled within the scope of the evidence is $4,800. Randles, 860 N.E.2d at 1230.

10

Here, the appropriate damages award to Ponziano is $48,983.43: the $145,400 Contract price, less the $91,616.57 already paid to Ponziano, less the $4,800 set-off to which Quadri is entitled.[5] The trial court's reduction of Ponziano's recovery to $16,000 is not within the scope of the evidence, and we reverse as clearly erroneous the trial court's decision to award Ponziano only $16,000 on the Contract.

<u>Mechanic's Lien Foreclosure</u>

Ponziano contends that the trial court's denial of Ponziano's request to foreclose on its mechanic's lien was in error. While the trial court entered specific findings and conclusions regarding Ponziano's mechanic's lien, those findings and conclusions addressed the validity of the lien and attorney's fees, rather than foreclosure of the lien.

Quadri offers no argument concerning the issue of foreclosure of Ponziano's mechanic's lien. An appellee's failure to respond to an issue raised by an appellant is akin to failure to file a brief. <u>Newman v. State</u>, 719 N.E.2d 832, 838 (Ind. Ct. App. 1999), <u>trans. denied</u>. This circumstance does not, however, relieve us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required. <u>Id.</u> We do not undertake to develop an argument on Quadri's behalf, and we may reverse upon Ponziano's prima facie showing of reversible error. <u>Carter v. Grace Whitney Props.</u>, 939 N.E.2d 630, 633 (Ind. Ct. App. 2010) (internal quotation and citations omitted). In this context, prima facie error means "at first sight, on first appearance, or on the face [of] it." <u>Id.</u> at 633-34 (internal quotation and citations omitted). This standard prevents two evils that otherwise would undermine the judicial

---

[5] <u>Am. Mgmt., Inc. v. MIF Realty, L.P.</u>, 666 N.E.2d 424, 432 (Ind. Ct. App. 1996) (a set-off amount is subtracted from the total amount of the larger debt).

process.  Vukovich v. Coleman, 789 N.E.2d 520, 524, n.4 (Ind. Ct. App. 2003).  By requiring the appellant to show some error, we ensure that the court, not the parties, decides the law.  Id.  By allowing the appellant to prevail upon a showing simply of prima facie error, we avoid the improper burden of having to act as advocate for the absent appellee.  Id.

Indiana mechanic's liens are purely statutory creations and in derogation of the common law.  Ind. Code § 32-28-3-1 et seq.; Clark, 861 N.E.2d at 1209.  The legislature has determined that, when labor or materials are provided to improve real estate, money damages, the remedy at law, are inadequate.  Clark, 861 N.E.2d at 1209.  Furthermore, the necessary allegations to support an action to foreclose on a mechanic's lien include the requirement that the complaint must show that the plaintiff had a contract to furnish labor or materials with the owner of the real estate, and that the work and materials were furnished under the contract.  Id.  There would be no need to foreclose on the lien if the contract were paid in full; therefore denying foreclosure on the theory that damages were awarded would eviscerate the mechanic's lien statute.  Id.

Here, Quadri does not dispute the validity of Ponziano's $45,549.43 mechanic's lien.  (App. at 20.)  Because the lien exists to secure payment of the debt the trial court found Quadri owed Ponziano, the trial court was required to order that the lien be foreclosed to comply with the mechanic's lien statute.  Clark, 861 N.E.2d at 1209.

Ponziano's mechanic's lien attaches to Quadri's real estate only to the extent that Quadri owes Ponziano on the Contract.  Clark's Pork Farms v. Sand Livestock Sys., Inc., 563 N.E.2d 1292, 1299 (Ind. Ct. App. 1990).  Because we have determined that Quadri

12

owes Ponziano $48,983.43, an amount in excess of Ponziano's mechanic's lien, Ponziano may foreclose on the entire amount of the lien.

We reverse as clearly erroneous the trial court's denial of Ponziano's request to foreclose on its mechanic's lien, and remand with instructions that the trial court order sale of the property subject to the $45,549.43 lien. I.C. §§ 32-28-3-6(d), 32-33-9-1 to -8. See also Clark, 861 N.E.2d at 1209. Ponziano must give notice to Quadri at least thirty days before the sale, during which time Quadri may redeem the debt and extinguish the lien. I.C. §§ 32-33-9-2, 32-33-9-3(b). See also Clark, 861 N.E.2d at 1209 n. 3. If there is a lien priority dispute between Ponziano and Wells Fargo, we also instruct the trial court on remand to determine the priority of the liens. Id. at 1209.

### Attorney's Fees

Finally, Ponziano contends that it is entitled to $16,054.48 in attorney's fees, and that the trial court abused its discretion in awarding it only $8,000.

What constitutes a reasonable attorney's fee in an action to enforce a mechanic's lien is a question of fact, the computation of which may depend on a variety of factors, including the time and effort required; the value of the interest involved; the experience, reputation, and ability of the attorneys performing the services; and the results secured at trial. W. Cent. Conservancy Dist. v. Burdett, 920 N.E.2d 699, 702 (Ind. Ct. App. 2010); Korellis Roofing, Inc. v. Stolman, 645 N.E.2d 29, 33 (Ind. Ct. App. 1995). The trial court has discretion in determining what constitutes a reasonable attorney's fee, and we will reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Mason v. Mason, 775 N.E.2d 706, 711 (Ind. Ct.

13

App. 2002), <u>trans. denied</u>.  The trial court may look at the responsibility of the parties in incurring the attorney's fees, and the trial judge possesses personal expertise he or she may use when determining reasonable attorney's fees.  <u>Id.</u>

The award of an attorney's fee, however, like the award of other costs of litigation, is not the same question as the determination of reasonableness of a fee as between the attorney and his client, or the actual expenses to be reimbursed to the attorney by his client.  <u>Korellis</u>, 645 N.E.2d at 33.  The fee an attorney expects from a client is the subject of a separate agreement between the attorney and client, and is not directly dependent on whether the court awards fees, or on the amount of the fees awarded.  <u>Id.</u> The award of attorney's fees in an action to foreclose on a mechanic's lien is not an attempt to compensate the attorney for all the legal services performed in connection with the lien; rather, the amount of the award is intended to reflect the amount the lienholder reasonably had to expend to foreclose on the lien.  <u>Id.</u> at 33-34.  Such awards should be made with caution so that excessive awards of attorney's fees do not discourage property owners from challenging defective workmanship on the part of lien holders.  <u>Id.</u> at 34. The amount awarded as attorney's fees therefore should be reasonable in relation to the amount of the judgment secured.  <u>Id.</u>

Here, the trial court heard testimony regarding Ponziano's attorney's fees, and Ponziano's attorney's bills were entered into evidence.  (App. at 75-85; Tr. at 100-06.) While the evidence substantiates that Ponziano incurred $16,054.48 in attorney's fees from its dispute with Quadri, Ponziano is entitled only to those attorney's fees stemming from its action to foreclose on its mechanic's lien.  The mechanic's lien foreclosure issue

14

was but one of multiple issues tried in the trial court, and was relatively minor in complexity and nature compared to the other issues. Furthermore, the attorney's fees must be reasonable in relation to the amount of the lien secured, and Ponziano may recover at most $45,549.43 on its mechanic's lien.

Upon examining the evidence, and the circumstances before the trial court, we conclude that the court's decision was not against the logic and effect of the facts and circumstances before it. Mason, 775 N.E.2d at 711. The court did not abuse its discretion in limiting the award of attorney's fees to Ponziano to $8,000. Korellis, 645 N.E.2d at 34. Our standard permits us to reverse the trial court only if there is a total lack of supporting evidence, or if the evidence is undisputed and leads solely to a contrary conclusion. Id. Here, the award of attorney's fees to Ponziano was not inadequate under this standard. We affirm the trial court's decision to award Ponziano $8,000 in attorney's fees.

### Conclusion

The trial court erred when it awarded Ponziano only $16,000 on the Contract, and when it denied Ponziano's request to foreclose on its mechanic's lien. The trial court did not abuse its discretion when it awarded Ponziano $8,000 in attorney's fees.

Affirmed in part; reversed in part; remanded with instructions.

RILEY, J., and CRONE, J., concur.

15